James V. DEVITO, Plaintiff,

v.

The INCORPORATED VILLAGE OF VALLEY STREAM; George Donley, as Mayor of the Incorporated Village of Valley Stream; Michael Belfiore, as Trustee of the Incorporated Village of Valley Stream; Paul Brown, as Trustee of the Incorporated Village of Valley Stream; Thomas Williams, as Village Attorney of the Incorporated Village of Valley Stream; Vincent W. Ang, as Village Clerk of the Incorporated Village of Valley Stream; Robert J. Gunther, as Superintendent of Public Works of the Incorporated Village of Valley Stream; and Thomas Viani, as an Independent Contractor of the Incorporated Village of Valley Stream, Defendants.

No. CV 94–5448 (DRH).

United States District Court,
E.D. New York.

Jan. 21, 1998.

James A. DeVito, Forest Hills, NY, for Plaintiff.

Jaspan Schlesinger Silverman & Hoffman LLP by Laurel R. Kretzing, Garden City, NY, for Defendants.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

This matter comes before the Court on Defendants' Rule 56 motion for summary judgment on Plaintiff's cause of action for violation of his civil rights, pursuant to 42 U.S.C. § 1983. Defendants (sometimes hereinafter the "Village") maintain that this cause of action is time-barred; alternatively, they attack Plaintiff's civil rights claim on its substantive merits.

For the reasons discussed below, Plaintiff's Section 1983 cause of action against the Village is dismissed on timeliness grounds. Plaintiff's pendant state law claims are also dismissed.

## BACKGROUND

On November 28, 1994, Plaintiff filed a Complaint alleging, *inter alia*, that he was employed as the Village Building Inspector for the Incorporated Village of Valley Stream for approximately fourteen years "until he retired and resigned under duress on November 29, 1991." (Compl. ¶ 2.) The gravamen of the Complaint is that Plaintiff was forced to resign from his position

in furtherance of a common plan, scheme and conspiracy whereby defendants sought to terminate the employment of numerous individuals employed by the defendant, VILLAGE, because they did not support said defendants in the 1991 election and in order to create employment opportunities within the Village for those individuals who had supported said defendants in the 1991 election.

(*Id.* ¶ 15.) The Complaint further alleges the following series of events: (1) in September 1991, Defendants Williams, Ang and Gunther met with Plaintiff and informed him that "unless he resigned from his employment position and took an early retirement, [he] would be brought up on disciplinary charges and would forfeit his retirement benefits"; (2) in October 1991, Defendants Donley, Belfiore and Brown "approved" Plaintiff's early retirement; (3) on October 22, 1991, Defendant Viani was hired as a Village Independent Contractor; and (4) on November 29, 1991, Plaintiff retired as Village Building Inspector. (*Id.* ¶¶ 2, 12–13, 17–18.)

The Complaint asserts three causes of action, to wit: (1) violations of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983; (2) violation of the

New York State Civil Service Law; and (3) breach of the attorney-client privilege by Defendant Williams. (*Id.* ¶¶ 19–34.) On January 19, 1996, Defendants moved for judgment on the pleadings on the ground that Plaintiff knew or should have known of his alleged injury more than three years prior to the date on which this action was commenced.

After converting Defendants' motion for judgment on the pleadings to one for summary judgment, in accordance with Federal Rule of Civil Procedure 12(c), the Court, by Memorandum and Order dated October 9, 1996 (hereinafter *"DeVito I"*), dismissed on timeliness grounds Plaintiff's Section 1983 cause of action against Defendants Donley, Belfiore, Brown, Williams, Ang, Gunther and Viani in their individual capacities. Specifically, the Court determined that, for statute of limitations purposes, the alleged harmful act committed by the Defendants individually "occurred in September of 1991 when Defendants Williams, Ang and Gunther informed Plaintiff that 'unless he resigned his employment position and took an early retirement, [he] would be brought up on disciplinary charges and would forfeit his retirement benefits,' " (*DeVito I* at 6 (quoting Compl. ¶ 12)), or, alternatively, "at the latest in October of 1991 when Plaintiff's early retirement was 'approved.' " (*DeVito I* at 6.) The Court further reasoned that "Plaintiff's subsequent retirement on November 29, 1994 was merely the 'inevitable consequence' of the [alleged harmful] decision previously made by Defendants." (*Id.* at 6 (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 257–58, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)).)

With respect to Plaintiff's claims against the Village, the Court in *DeVito I* initially noted that "a cause of action against [a] municipality[1] does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a

county 'policy or custom.' " (*DeVito I* at 7 (quoting *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156–57 (2d Cir.1995) (internal quotations omitted)).) Although the Court observed that Plaintiff had failed to provide "any indication that the reasons provided [by the Village] in September 1991 for Plaintiff's 'forced retirement' were spurious and that he later discovered the true animus for [the Village's] action," (*DeVito I* at 9), it went on to hold that a material issue of fact existed on the question of when Plaintiff first learned, or reasonably should have learned, that his "forced retirement" was the product of a Village policy or custom. (*Id.*)

Nevertheless, the Court invited further submissions on the issue of the delayed accrual theory enunciated in *Pinaud.* The instant motion followed.

## DISCUSSION

### I. Summary Judgment Standards

The legal principles employed by the Court when ruling upon a motion for summary judgment are well-established. Summary judgment may be granted only when it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The moving party bears the initial burden "of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The substantive law governing the case will determine those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

1. The Court's analysis is the same with respect to both the municipality and the individual Defendants in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ("[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official...."); *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

Once the moving party has come forward with support demonstrating that no genuine issue of material fact remains to be tried, the non-moving party "must come forward with affidavits, depositions, or other sworn evidence as permitted by Fed.R.Civ.P. 56, setting forth specific facts showing that there exists a genuine issue of material fact." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996). In reviewing these materials, the Court "is required to draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment." *Id.*

Nevertheless, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48 (emphases omitted). Moreover, "[c]onclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,'" *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson*, 477 U.S. at 252), and "more than 'some metaphysical doubt as to the material facts.'" *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Put another way, "[t]he non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, ... or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (citations and internal quotations omitted). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994).

## II. Accrual of Plaintiff's Section 1983 Claim Against the Village

### A. Accrual Standards

■ The limitations period for Section 1983 actions "is found in the 'general or residual [state] statute [of limitations] for personal injury actions.'" *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir.1997) (quoting *Owens v. Okure*, 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989)). In New York, that period is three years, as provided under New York Civil Practice Law and Rules Section 214(5). *See, e.g., Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir.1994); *Day v. Morgenthau*, 909 F.2d 75, 79 (2d Cir.1990). The three-year statute of limitations applies with equal force to claims against a municipality. *See Singleton v. City of New York*, 632 F.2d 185, 189 (2d Cir.1980).

■ Although state law supplies the limitations period for Section 1983 claims, "federal law governs the determination of the accrual date (that is, the date the statute of limitations begins to run)." *Ormiston*, 117 F.3d at 71; *accord Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir.1994). Under federal law, the limitations period accrues "when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Cullen v. Margiotta*, 811 F.2d 698, 725 (2d Cir.1987); *see Singleton*, 632 F.2d at 192 ("The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action.").

In order "to sustain a claim for relief under 42 U.S.C. § 1983 against a municipal defendant, the plaintiff must show the existence of an officially adopted policy or custom that caused injury and a causal connection between that policy or custom and the deprivation of a constitutional right." *Fox v. Doran*, 974 F.Supp. 276, 282–83 (S.D.N.Y. 1997) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Therefore, "a cause of action against the municipality does not necessarily begin to accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a [municipal] 'policy or custom.'" *Pinaud*, 52 F.3d at 1157. "Where no single act is sufficiently decisive to enable a person to realize that he has suffered a compensable injury, the cause of action may

not accrue until the wrong becomes apparent.'" *Id.* (quoting *Singleton,* 632 F.2d at 192–93).

■ While "in some circumstances, factual issues related to statute of limitations should be put before a jury," *Eagleston,* 41 F.3d at 871, the timeliness of a cause of action may properly be determined by the Court on summary judgment if no rational jury could find that the action was filed within the statutory limitations period. *See id.* (finding district court properly determined that Section 1983 action untimely where no disputed facts were presented); *Childers Oil Co. v. Exxon Corp.,* 960 F.2d 1265, 1273 (4th Cir. 1992) (*"[I]f* resolution of a statute of limitations defense presents a genuine question of material fact, a jury should resolve it. If not, a statute of limitations defense may be applied as a matter of law."); *Hofstetter v. Fletcher,* 905 F.2d 897, 904–05 (6th Cir.1988) (holding trial court properly instructed jury with respect to statute of limitations where evidence could have supported finding that RICO action filed timely); *Barrett v. United States,* 689 F.2d 324, 333 (2d Cir.1982) (determining that accrual of claim must await resolution at trial where plaintiffs "raised factual issues concerning whether or not they had reason to know of ... injuries"); *D'Angelo v. City of New York,* 929 F.Supp. 129, 132 (S.D.N.Y.1996) ("Since a rational jury could conclude that plaintiff could not have reasonably been aware of [his] claim [within the statutory period], defendants' motion [to dismiss action as time-barred] must be denied."); *Hooper v. Sachs,* 618 F.Supp. 963, 981 (D.Md.1985) ("Reasonable men, in the opinion of this court, could draw different conclusions from the facts presented herein regarding when the plaintiffs should have known of the injury allegedly caused them."), *aff'd,* 823 F.2d 547 (4th Cir.1987).

Keeping in mind the foregoing principles, the Court proceeds to address the merits of the Village's motion.

### B. Application to the Instant Case

■ The Village contends that Plaintiff knew or should have known of their alleged policy or custom of taking adverse action against those persons who did not support the new administration in the March 1991 election when he was confronted in September 1991 by the Village Attorney, Village Clerk and Superintendent of Public Works and forced to choose between retirement or disciplinary action on account of alleged private work that he performed during Village business hours. In support thereof, the Village points to Plaintiff's own deposition testimony, as well as numerous newspaper articles appearing in the Valley Stream *Herald,* Valley Stream *Maileader* and *Newsday.*

In his Complaint, Plaintiff claims that the Village conspired to terminate him because he "supported and/or participated in the 1991 campaign to reelect the incumbent [Village] candidates." (Compl. ¶¶ 11, 15.) The incumbent candidates, of course, lost the election. At his deposition, Plaintiff was asked what facts he had to support his allegation that the Village developed a policy or custom to terminate certain Village employees based upon their political affiliation and/or preferences with respect to the March 1991 election. Plaintiff responded that "[t]here were five village employees who were dismissed." (Williams Aff. ¶ 8 & Ex. K .) The following colloquy then ensued between Plaintiff and the Village's attorney:

Q. Who are they?

A. I forget their names. It was in the newspaper. Eventually they went to Court and they made a settlement with the village. Based on that, that was another reason why I realized the village didn't want me there. What they did to the other five employees. They were not Civil Service employees. So they couldn't dismiss me as easily as they did the other five.

Q. You found this out solely through reading a newspaper article?

A. That is right.

Q. *When did you read that newspaper article?*

A. *When it came out about a month after then election, maybe two months after the election. That was the first thing that [the new Village] administration tried to do.*

Q. What newspaper did you read that in?

A. I guess it was the [Valley Stream] Herald or the [Valley Stream] Mai-leader or both.

Q. Not in Newsday. Did you read Newsday?

A. It might have been. I don't recall.

(*Id.* (emphasis added).) In point of fact, the Village points to, *inter alia*, two articles published in the Valley Stream *Herald* on April 25, 1991 and July 25, 1991, and an article published in *Newsday* on August 29, 1991. The first *Herald* article discusses the firing of eight part-time Village employees. In the article, Deputy Mayor Michael Belfiore is quoted as saying that "[i]t is simply a coincidence that some of those let go may have been Republican[2] committeemen." (*Id.* Ex. H.) The article goes on to state that Deputy Mayor Belfiore was referring to "rumored criticism of the firings." (*Id.*) The second *Herald* article expands upon the first, noting that the termination of the eight Village employees "has gone to the union as a grievance" and that "[t]here is talk of a class action." (*Id.* Ex. I.) Finally, the *Newsday* article contains far-reaching allegations that the new Village administration was targeting Republicans and political opponents for dismissal:

> Donley's administration, according to former officials and their supporters, has systematically targeted for dismissal Republican committee members and supporters of the old regime who held village jobs or appointed posts. Recently, the administration fired six part-time workers, five of whom are committee members. Some of the dismissed workers or appointees have filed lawsuits against the village charging they were improperly dismissed because of their political affiliation....

> "It seems obvious that anyone who is active within the Republican Party—the local organization or the county one—has been removed for their political affiliation," charged defeated Mayor John DeGrace.... "You cannot express an opinion politically without fear of retribution.

Anyone with party affiliation must be wary."

(*Id.* Ex. J.)

It was in this highly-charged atmosphere that Village officials approached Plaintiff in September 1991 with an affidavit from Marilyn and Anthony Esposito, sworn to on July 19, 1991. In the affidavit, the Espositos aver, *inter alia*, that they retained Plaintiff to supervise and oversee the construction of their new home. (Esposito Aff. ¶ 22.) According to the Espositos, Plaintiff appeared at the construction site "4 to 5 days a week, 3 to 4 hours per day . . . on a regular basis on weekdays between the hours of 9 a.m. and 4 p.m." when construction was in its initial stages, and "3 or 4 days a week anywhere from 1 to 3 hours per day . . . [a]s work progressed." (*Id.* ¶¶ 22–23.) The Espositos further maintain that Plaintiff's "on-site presence" extended from November 1989 through October 1990. (*Id.* ¶ 24.) Finally, the Espositos claim that they "called [Plaintiff] a number of times at the Valley Stream Village Hall and . . . discussed th[eir] project with [Plaintiff] while he was at the Village Hall." (*Id.* ¶ 28.) It is Plaintiff's contention, however, that the Espositos' allegations were "concocted" (Pl.'s Aff. at 2, 4.)

Looking solely to Plaintiff's affirmative representations, which for purposes of this motion are accepted as true, the Court is faced with the following facts. First, prior to the March 1991 election, Plaintiff was telephoned by Defendant Thomas Williams, now the Village Attorney, seeking his aid and support for the Citizen's party in the election. (Pl.'s Aff. at 3.) According to Plaintiff, Williams had "first-hand knowledge of the substantial financial contributions [Plaintiff] . . . raised during past elections." (*Id.*) Moreover, Williams knew Plaintiff was a registered Republican. (*Id.*) Second, Plaintiff was "politically active" in seeking the reelection of the incumbent Republican administration. (Pl.'s Rule 3(g) Statement ¶ 9.) Third, within a month or two following the March 1991 election, Plaintiff discovered through ar-

---

**2.** Although the newly-elected mayor of Valley Stream, George Donley, was (and apparently still is) a registered Republican, he ran against the established Republican administration as the head of the Citizen's Party, a "coalition independent political body" made up of both Democrats and Republicans. (Williams Aff. ¶ 4; Village Rule 3(g) Statement ¶ 24.)

ticles in the local newspapers that Village employees were claiming that they were terminated by the new administration solely because of their political affiliation and/or support for the old Village administration. (Pl.'s Rule 3(g) Statement ¶ 3; Williams Aff. ¶ 8 & Ex. K.) Fourth, Plaintiff was wrongly accused by the Espositos of performing private work on Village time. (Pl.'s Aff. at 2, 4.) Finally, in September 1991, Plaintiff, at a meeting between himself, the Village Attorney, the Village Clerk and the Superintendent of Public Works, was given the choice of either taking early retirement or facing disciplinary action for allegedly performing private work on Village time.

The Village argues that based upon the foregoing, Plaintiff was "armed with all of the knowledge he needed to commence the instant action against the municipal defendants when he was offered early retirement in September 1991." (Williams Aff. ¶ 9.) The Court agrees.

As a preliminary matter, Plaintiff has adduced almost no facts of an evidentiary nature establishing why he did not, or could not, have known of the Village's alleged policy or practice of terminating their political enemies in September 1991, or, at the latest, in October 1991, when his retirement was "approved." (Compl. ¶ 13.) Instead, Plaintiff proffers such conclusory allegations as "I did not support the defendants['] political party, however, it was not until well after my retirement that I realized the ramifications of my political decision" and "[i]t was not until well after I retired that I discovered that there was a connection between these firings in April 1991 and my retirement on November 29, 1991." (Pl.'s Aff. at 3–4.) Faced, *inter alia*, with the knowledge that certain of his co-employees were claiming discrimination based upon their political affiliation, however, and vehemently denying the substance of the Espositos' claims when confronted by top-level Village officials, Plaintiff's bare proffer that he did not "put two and two together" is wholly unconvincing. *See Blankman v. County of Nassau*, 819 F.Supp. 198, 208 (E.D.N.Y.) ("[A] Plaintiff[ ] has an obligation to use reasonable diligence in ascertaining that he has a claim."), *aff'd*, 14 F.3d 592 (2d Cir.1993).

Moreover, Plaintiff's alleged lack of knowledge, which can best be characterized as willful ignorance, is unaccompanied by any specific facts detailing when or by what means Plaintiff "realized" that the Village's actions could be said to be the product of a policy or custom. Allowing Plaintiff's action to proceed solely based upon his conclusory "realization" of the alleged existence of a policy or custom would in effect permit Plaintiff to singlehandedly dictate when the statute of limitations accrues and, concomitantly, "enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims." *Singleton*, 632 F.2d at 192.

The few facts that Plaintiff does proffer as justification for his delay in commencing this lawsuit are either lacking in merit or irrelevant. For example, Plaintiff notes that certain Village employees were terminated "within two weeks of the inception of the newly elected administration," (Pl.'s Aff. at 3), whereas Village officials did not confront Plaintiff with the Esposito allegations until some six months after the election. Plaintiff further claims that he "did not know" and "never had any contact with" these "part-time employees." (*Id.* at 3–4.) It is well-settled, however, that "'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.'" *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir.1997) (quoting *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir.1996)). At his deposition, Plaintiff did not appear to place much significance on, or take much comfort in for that matter, the fact that those original terminations occurred some five months before the Village officials met with him to discuss the Esposito matter. To the contrary, Plaintiff testified as follows:

> Based on [the newspaper articles], that was another reason why I realized the village didn't want me there. *What they did to the other five employees. They were not Civil Service employees. So they couldn't dismiss me as easily as they did the other five.*

(Williams Aff. ¶ 8 & Ex. K. (emphasis added).) In the Court's view, such testimony conflicts with Plaintiff's apparent argument that he initially found no connection between these earlier firings and his own situation with the Village. Moreover, the fact that Plaintiff may not have known or had contact with other terminated employees is largely irrelevant; the important fact is that Plaintiff was on notice of the substance of their claims against the Village.

■ Plaintiff also relies heavily on the circumstances surrounding the hiring of Thomas Viani "to the newly created position of Village Independent Contractor." (Pl.'s Aff. at 2.) According to Plaintiff,

> [n]o one informed me that said hiring was to replace me as Village Building Inspector. I had never met the defendant, Thomas Viani. I did not know at the time that he was an active member in the same political party as the defendants. I did not know that the defendant, Thomas Viani, was not Civil Service eligible as required for my job description. I did not know

that the defendant, Thomas Viani, was a neighbor and lived on the same block with the defendant, Michael Belfiore. I discovered all of this information, well after I retired.

(Id.¶¶ 2–3.) Initially, the Court again notes that Plaintiff provides absolutely no facts indicating when, how and/or from whom he obtained information relating to the Village's hiring of Viani.[3] In any event, Plaintiff's reliance on Viani's employment status with the Village is misplaced. The alleged deprivation violating Plaintiff's constitutional rights was not his actual retirement or replacement, which in itself was not unlawful, but rather the Village's forcing him to choose between voluntary retirement and being brought up on disciplinary charges, allegedly based on Plaintiff's protected First Amendment free speech and association rights.[4] *See also Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (" 'Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.' " (quoting *Ricks*, 449 U.S. at 257)). As the

---

**3.** Although not argued by Plaintiff, the Court finds that the doctrine of fraudulent concealment is not applicable in the instant case. That doctrine provides that "when a 'defendant fraudulently conceals the wrong, the time [limit of the statute of limitations] does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action.' " *Pinaud*, 52 F.3d at 1157 (quoting *Keating v. Carey*, 706 F.2d 377, 382 (2d Cir.1983)). To equitably toll the statute of limitations under the fraudulent concealment doctrine, however, "a plaintiff must submit non-conclusory evidence of a conspiracy or other fraudulent wrong which precluded his possible discovery of the harms that he suffered." Pinaud, 52 F.3d at 1157. Plaintiff has failed to do so here. *See, e.g., Mahoney v. Beacon City School Dist.*, 988 F.Supp. 395, 400 (S.D.N.Y.1997) (noting plaintiff's "bare conclusions ... do not even begin to meet [her] burden of pleading fraud with particularity").

**4.** For this reason, Plaintiff's attempt to analogize this case to *Smith v. United Parcel Serv. of Am.*, 65 F.3d 266 (2d Cir.1995) and *Verschuuren v. Equitable Life Assurance Soc'y of the United States*, 554 F.Supp. 1188 (S.D.N.Y.1983) is also misplaced. *Smith* involved an action brought under the Americans With Disabilities Act, and at least one district court in this Circuit has distinguished *Smith* solely on this ground. *See Jacobs*

*v. Village of Tuckahoe*, No. 94 Civ. 4888(SS), 1996 WL 355376, at *3 (S.D.N.Y. June 27, 1996) (holding in Section 1983 action that "plaintiff has not asserted a claim under the ADA and he cannot adopt its rules of accrual"). More important, in both *Smith* and *Verschuuren* (involving a claim under the Age Discrimination in Employment Act), the alleged discriminatory action was the plaintiff's termination, and the issue was whether the plaintiff had received clear notice of such termination. Both courts held that a genuine issue of fact existed on this issue. *See Smith*, 65 F.3d at 268 (holding certain "admonitions" to plaintiff by her employer "cannot as a matter of law be considered 'definite notices of termination' and statements of [the employer's] 'official position' "); *Verschuuren*, 554 F.Supp. at 1190–91 (finding reasonable person could conclude that "equivocal" letter did not notify employee of dismissal).

Here, unlike in *Smith* and *Verschuuren*, Plaintiff makes no allegation that the choice given him by Village officials in September 1991 was "equivocal" or a mere "admonition." (*See* Compl. ¶ 12 ("In or about September 1991, the defendants ... met with the plaintiff and informed him that unless he resigned his employment position and took an early retirement, the plaintiff would be brought up on disciplinary charges and would forfeit his retirement benefits.").)

Court noted in *DeVito I*, "Plaintiff's subsequent retirement on November 29, 1994 was merely the 'inevitable consequence' of the decision previously made by [the Village]." (*DeVito I* at 6 (quoting *Ricks*, 449 U.S. at 257–58).) Under Plaintiff's line of reasoning, he could have indefinitely tolled the statute of limitations by opting to maintain his employment with the Village and facing disciplinary charges, despite the fact that the discriminatory act of which he complains occurred in September 1991, or in October 1991 at the latest.

■ Finally, Plaintiff's present assertion that his knowledge of Viani's background and credentials was necessary in order to discover his Section 1983 cause of action against the Village is belied by his deposition testimony. When asked the specific question of what facts he possessed in support of his *Monell* claim against the Village, Plaintiff cited only the five Village employees who were dismissed soon after the March 1991 election. Moreover, later in the deposition, the following colloquy took place between the Village's counsel and Plaintiff:

Q. For all you know, [the Village] believe[s] that you worked at the Esposito's home during village hours; is that correct? You don't know one way or the other?

A. I don't. Who does? Who knows?

Q. You don't?

A. I don't.

Q. So you have no facts which would indicate that you were fired because you were a Republican; is that correct?

A. I have no facts.

(Williams Aff. Ex. M.) In sum, with no evidence adduced during discovery that Plaintiff's knowledge of Defendant Viani's alleged

replacement of him was necessary in order to ascertain his *Monell* claim, Plaintiff should not now be heard to argue that it was in order to defeat the Village's statute of limitations defense. *See Raskin*, 125 F.3d at 63.

In sum, the Court finds that no rational jury could conclude that Plaintiff did not know, or could not have known, of the existence of an alleged "policy or custom" of the Village to terminate Village employees on the basis of their political affiliation prior to November 28, 1991. While recognizing that the statute of limitations for a *Monell* claim does not necessarily accrue upon the occurrence of the alleged discriminatory act forming the basis for the claim,[5] the Court nevertheless holds that these two dates converge in the instant case. Accordingly, Plaintiff's Section 1983 cause of action against the Village is dismissed as time-barred.

## II. Plaintiff's State Law Claims

■ The Complaint asserts pendant state law claims for violations of the New York State Civil Service Law and breach of the attorney-client privilege. The decision whether to exercise pendant jurisdiction is committed to the discretion of the Court. *Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir.1993). When all federal claims are dismissed before trial, however, a federal court should usually decline to exercise jurisdiction over the remaining state law claims. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

Given that no federal claims remain in this action, the Court dismisses the remaining state law claims.

## CONCLUSION

For the reasons articulated above, the Village's motion for summary judgment on Plaintiff's Section 1983 action is **GRANTED,** and Plaintiff's remaining state law claims are

---

5. As noted in the Court's prior opinion dismissing Plaintiff's claims against the defendants in their individual capacities, the alleged discriminatory act occurred in September 1991, when Plaintiff met with Defendants Williams, Ang and Gunther and was given the choice between retiring or facing disciplinary charges, or, at the latest, in October 1991, when Plaintiff's early retirement was "approved."

**DISMISSED.** The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**