ASSOCIATION OF COMMUNITY OR-
GANIZATIONS FOR REFORM
NOW, et al., Plaintiffs,

v.

NEW YORK CITY DEPARTMENT OF
EDUCATION; Joel Klein, Chancellor,
New York City Department of Edu-
cation; Albany School District; and
Lonnie Palmer, Superintendent, Alba-
ny School District, Defendants.

No. 03 CIV. 1080(JGK).

United States District Court,
S.D. New York.

June 20, 2003.

Charles King, Crowe, Deegan Dickson and Benrubi, LLP, Glen Cove, NY, for Plaintiffs.

Lisa Grumet, Michael D. Hess Corp. Counsel, New York, NY, for Defendants.

### OPINION AND ORDER

KOELTL, District Judge.

This class action lawsuit[1] is brought pursuant to 42 U.S.C. § 1983 by the Association of Community Organizations for Reform Now and the parents of schoolchildren residing in New York against two local school districts and their superintendents or district heads for alleged violations of the No Child Left Behind Act ("NCLBA" or "the Act"), 20 U.S.C. § 6301 *et seq.* The Association of Community Organizations for Reform Now, along with the parents of schoolchildren, including Eunice Staton, Charlene Mingo, Latasha Gibbs, Charlene Wilson, Keikola Valentine, Laverne Jones, Carmella Glass, Deborah Powell–Jasper, Birdie Kite, Michelle Tucker, and, (collectively "the plaintiffs") have raised two causes of action against the New York City Department of Education and its Chancellor, Joel Klein (the "New York City defendants"); and the Albany School District and its superintendent, Lonnie Palmer (the "Albany defendants") (collectively "the defendants"), including a claim pursuant to 42 U.S.C. § 1983 for violation of the NCLBA (Count 1) and a claim under Article XI, Section I of the New York State Constitution (Count 2), and they seek various injunctive and equitable relief.[2]

The plaintiffs now seek a preliminary injunction requiring the defendants, among other things, to comply immediately with various provisions of the NCLBA and preventing the defendants from using for any other purpose funds previously allocated for compliance with NCLBA requirements.

In addition, pursuant to Fed.R.Civ.P. 12(b)(6), the defendants have moved to dismiss the plaintiffs' claim alleging violations of the NCLBA, on the grounds that based on the standards articulated by the Supreme Court in *Gonzaga Univ. v. Doe,* 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), the plaintiffs cannot maintain individual lawsuits under the NCLBA.

---

1. A class has not yet been certified in this action.

2. The original complaint also named the Hempstead Union Free School district and its superintendent, Nathaniel Clay, and the Buffalo School City School District, and its head, Marion Canedo, as defendants, and Shello Hardy and Olive Warner as plaintiffs. At the oral argument on the motions, the parties indicated that the actions against these original defendants were withdrawn and dismissed without prejudice pursuant to Fed. R.Civ.P. 41. The original plaintiffs listed in this footnote are no longer parties to the action because they are parents of children in the Buffalo and Hempstead school districts rather than in the New York City and Albany school districts.

The defendants have also urged the Court to decline to exercise supplemental jurisdiction over the remaining claim under the New York State Constitution.

Because the Rule 12(b)(6) motion to dismiss is potentially dispositive of the motion for a preliminary injunction, the Court will resolve that motion prior to deciding the remaining motion.

### I.

On a motion to dismiss, the allegations in the Complaint are accepted as true. *See Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998). In deciding a motion to dismiss, all reasonable inferences are drawn in the plaintiffs' favor. *See Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, the defendants' motion to dismiss should only be granted if it appears that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *See Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Grandon,* 147 F.3d at 188; *Goldman,* 754 F.2d at 1065.

In deciding the motion, the Court may consider documents that are referenced in the Complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002); *see also Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991); *VTech Holdings Ltd. v. Lucent Techs., Inc.,* 172 F.Supp.2d 435, 437 (S.D.N.Y.2001). "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it relies and which is integral to the complaint, the court may nonetheless take the document into consideration in deciding the defendant[s'] motion to dismiss, without converting the proceeding to one for summary judgment." *International Audiotext Network, Inc. v. AT & T Co.,* 62 F.3d 69, 72 (2d Cir.1995) (internal citation and quotation marks omitted); *see Yucyco, Ltd. v. Republic of Slovenia,* 984 F.Supp. 209, 215 (S.D.N.Y.1997).

### A.

In order to resolve the merits of the defendants' motion to dismiss, it is necessary to outline the basic provisions of the NCLBA.

The purpose of the NCLBA is "to ensure that all children have a fair, equal and significant opportunity to obtain a high-quality education and reach, at a minimum, proficiency on challenging State academic achievement standards and state academic assessments." 20 U.S.C. § 6301. The NCLBA, which is aimed a strengthening elementary and secondary schools, is a comprehensive education reform statute. 20 U.S.C. §§ 6301(1)-(12). The NCLBA's purpose is to be accomplished through a variety of means including, among other things,

> holding schools, local educational agencies, and States accountable for improving the academic achievement of all students, and identifying and turning around low-performing schools that have failed to provide a high quality education to their students, while providing alternatives to students in such schools to

enable the students to receive a high-quality education.

20 U.S.C. § 6301(4). It is the implementation of the NCLBA's provisions aimed at satisfying § 6301(4) that are issue in the current litigation.

Congress has authorized, pursuant to its federal spending powers, states as well as local educational agencies to receive federal funds in order to carry out the purposes of the NCLBA, provided that they abide by various conditions and requirements imposed by the Act. *See* 20 U.S.C. §§ 6302(i), 6303(g), 6311(a)(1), 6316(a)(1).[3] States receiving NCLBA funds must have the State educational agency "submit to the [Secretary of Education] a plan" that "demonstrate[s] that the State has adopted challenging academic content standards ..." 20 U.S.C. §§ 6311(a)(1),(b)(1)(A). Local educational agencies, such as the New York City and Albany school districts, that receive NCLBA funds must abide by the requirements in § 6316 of the Act. *See* 20 U.S.C. § 6316.

Section 6316 provides, in relevant part, that local educational agencies receiving NCLBA funds "use the State academics assessments ... described in the State plan to review annually the progress of each school served ... to determine whether the school is making adequate yearly progress..." 20 U.S.C. § 6316(a)(1)(A). What constitutes "adequate yearly progress" is to be defined by the State in which the local educational agency is located and in accordance with the standards outlined in § 6316(b)(2). Those schools that fail to achieve adequate yearly progress for two consecutive years are to be designated for "school improvement." 20 U.S.C. § 6316(b)(1)(A). A school that continues to fail to achieve adequate yearly progress for two years

after being designated for school improvement must be identified by the local education agency for "corrective action." 20 U.S.C. § 6316(b)(7)(C). If after a year of being designated for "corrective action" a school fails to make adequate yearly progress, the school is to be designated for "restructuring." 20 U.S.C. § 6316(b)(8)(A).

When a school has been identified for "school improvement" "corrective action" or "restructuring", the NCLBA's transfer and parental notification provisions are triggered. 20 U.S.C. §§ 6316(b)(1)(E), (5)(A), (7)(C)(i), 8(A)(i), (b)(6). The local educational agency must, for schools falling into any of these three categories, "not later than the first day of the school year following such identification, provide all students enrolled in the school with the option to transfer to another public school served by the local education agency, which may include a public charter school, that has not been identified for school improvement..." 20 U.S.C. § 6316(b)(1)(E)(i).

This option to transfer to schools that have not been identified for school improvement, corrective action or restructuring is not without exception. The option to transfer is not available if such a transfer is prohibited by state law. *See id.* In addition, the NCLBA requires that in providing the option to transfer, the "local educational agency shall give priority to the lowest achieving children from low-income families ..." 20 U.S.C. § 6316(b)(1)(E)(ii). Also, if all of the schools to which a student may transfer are designated for improvement, corrective action or restructuring, the local education agency "shall to the extent practicable, establish a cooperative agreement with

---

**3.** Local educational agencies, as is true in this case, are usually the local school districts responsible for schools located within a particular geographic area within a state.

other local educational agencies in the area for a transfer." 20 U.S.C. § 6316(b)(11). However, absent a cooperative agreement, a transfer may not be available. *See id.*

In addition to the transfer condition, the schools in the second year of being designated for improvement and continuing while they are designated as needing "corrective action" or "restructuring" must, in order to continue to receive NCLBA funds, offer what are known as "supplemental educational services" ("SES"). 20 U.S.C. §§ 6316(b)(5)(B), (7)(C)(iii), 8(A)(ii). SES are to be provided to eligible children "from a provider with a demonstrated record of effectiveness, that is selected by the parents and approved for that purpose by the State educational agency in accordance with reasonable criteria ..." 20 U.S.C. § 6316(e)(1).

As with the school transfer provisions, there are exceptions to the requirement that the local educational agency provide SES. First, the only children eligible for SES are those children from a low-income family. 20 U.S.C. § 6316(e)(12)(A). Second, SES need only be made available so long as there are sufficient funds allocated for that purpose. 20 U.S.C. § 6316(b)(10)(C). Finally, the requirements that a local educational agency provide SES may be waived by a State upon the request of the local educational agency. 20 U.S.C. § 6316(e)(10)(A).

In connection with the SES and transfer provisions, the NCLBA contains a parental notification provision that requires, among other things, that the local educational agency provide notice to parents if a school in which their child is enrolled is designated for school improvement, corrective action or restructuring and notice to parents if transfer is an option or if their child is eligible to receive SES. *See* 20 U.S.C. § 6316(b)(6).

The "Penalties" section of the NCLBA outlines the procedures available in the event of noncompliance by States with NCLBA provisions. This section of the statute contains no procedure for parents or students to seek judicial, administrative, or any other remedies for alleged noncompliance with the dictates of the Act. *See* 20 U.S.C. § 6311(g)(2). The section is not directed towards noncompliance by local educational agencies and only contemplates penalties that may be taken against individual states. *See id.* The only remedy the penalties provision provides in the case of a state's failure to comply is that "the Secretary [of Education] may withhold funds for State administration under this part until the Secretary determines that the State has fulfilled those requirements." *Id.* In addition to these provisions contained in the NCLBA, there are remedies available to the Secretary of Education to take action against a federal funds recipient who fails to comply with legal requirements imposed by a federal education statute, including withholding of funds and conducting proceedings for the recovery of funds and the issuance of cease and desist orders. *See* 20 U.S.C. §§ 1234(a)-(i).

The plaintiffs' class action complaint alleges that the defendants deprived, and continue to deprive, the parents of schoolchildren residing in the New York City and Albany school districts of their right under the NCLBA to transfer their children out of schools and to receive appropriate SES. (Compl.¶ 1.) In addition, the plaintiffs allege that parents in these districts were never given appropriate notice, as required under the NCLBA, of their rights to transfer their children and the rights of their children to receive SES. (Compl.¶ 28.)

For the purposes of this motion, the following facts, as alleged in the Complaint, are accepted as true.

Eunice Staton, Latasha Gibbs, Charlene Mingo, Laverne Jones, Carmella Glass, Deboarah Powell–Jasper, and Keikola Valentine are all parents of children who attend New York City public schools that were identified as failing schools by the New York State Education Department on September 4, 2002. (Compl.¶¶ 7–13.) The New York City Department of Education, the relevant New York City local educational agency, only notified parents in New York City of their NCLBA rights in an untimely fashion, or failed to notify them at all of such rights. (Compl.¶¶ 45, 48, 51–53.) To the extent that parents in the New York City area did receive information regarding their rights to transfer their children pursuant to the NCLBA, the information provided to them was inaccurate and misled parents by incorrectly informing them that their transfer requests would be rejected for a variety of reasons. (Compl.¶¶ 47–50.) In addition, in violation of the NCLBA, the New York City Department of Education rejected outright the vast majority of transfer requests. (Compl.¶¶ 46, 49.)

With respect to SES, the New York City Department of Education continues to represent that it will provide SES, but fails to inform parents adequately about their ability to obtain SES, and as a result, children eligible to receive SES are unable to obtain them. (Compl.¶¶ 54–57.) SES are also increasingly difficult to obtain for a variety of reasons, including confusing information regarding eligible SES providers. (Compl.¶¶ 57–62.)

Charlene Wilson, Michelle Tucker, and Bridie Kite are all parents whose children attend schools in the Albany School District that were identified as failing schools by the New York State Education Department on September 9, 2002. (Compl.¶¶ 14–16.) The allegations raised against the Albany School District are similar to those raised against the New York City School district, namely that adequate parental notification was not given to parents of children in the respective schools regarding the rights to transfer children and the rights of children to receive SES, (Compl.¶¶ 64–68), that parents were denied their rights to transfer their children out of failing schools, (Compl.¶¶ 69–75), and that SES were not provided appropriately as required by the NCLBA, (Compl.¶¶ 76–80).

The defendants have moved to dismiss the plaintiffs' allegations on the grounds that the text and structure of the NCLBA does not evince an unambiguous Congressional intent to confer rights upon the parents of schoolchildren, and consequently, pursuant to the Supreme Court's recent decision in *Gonzaga v. Doe*, the plaintiffs cannot maintain an action pursuant to 42 U.S.C. § 1983 for violations of the NCLBA.

## B.

■ In *Gonzaga*, the Supreme Court held that an individual may not bring a § 1983 action to enforce provisions of the Family Educational Rights and Privacy Act of 1974 ("FERPA"), because the statute created no personally enforceable rights. 536 U.S. at 276, 122 S.Ct. 2268. FERPA, like the NCLBA, was enacted pursuant to Congress' spending power and conditioned the receipt of federal funds on various requirements relating to the access and disclosure of students' educational records. *Id.* at 278, 122 S.Ct. 2268.

■ In reaching this conclusion, the Court determined that the initial inquiry for deciding whether a federal statute creates personal rights that may be enforced through a § 1983 action is identical to the initial inquiry for determining whether a federal statute creates an implied private right of action. *Id.* at 285, 122 S.Ct. 2268.

That inquiry is a determination "as to whether or not Congress intended to confer individual rights upon a class of beneficiaries." *Id.* at 285, 122 S.Ct. 2268. And as the Court explained, "if Congress wishes to create new rights ... it must do so in clear and unambiguous terms ..." *Id.* at 290, 122 S.Ct. 2268; *see also Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 783 (2d Cir.2002). If the text and structure of a federal statute do not evince this clear and unambiguous Congressional intention to create individual rights, "there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga*, 536 U.S. at 286, 122 S.Ct. 2268.

In view of these standards, it is clear that Congress did not intend to create individually enforceable rights with respect to the notice, transfer or SES provisions contained in the NCLBA.[4]

■ First, the notice, transfer and SES provisions do not contain the kind of "rights-creating" language that the Supreme Court has deemed "critical to showing the requisite congressional intent to create new rights." *Id.* at 287, 122 S.Ct. 2268. When a statute has sufficient "rights-creating" language, the statute focuses on conferring a benefit or entitlement on an individual or a class of individuals and does not focus on the entity or person that the statute intends to regulate. *See id.* at 287, 122 S.Ct. 2268. As the Court explained in *Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), "statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Id.* at 289, 121 S.Ct. 1511 (quotations omitted). The provisions of the NCLBA at issue focus on two entities—states and local educational agencies—and the restrictions that flow from their decisions to receive NCLBA funding. The NCLBA is drafted to focus on the regulation of these entities and not on conferring any direct benefit, entitlement or right upon individual, such as parents and students. Congress, well aware of how to confer entitlements on individuals, could have drafted the NCLBA to provide that parents have the right to transfer their children or that students have the right to receive SES, but instead focused on what states and local educational agencies must provide to parents and children and on regulating the states and local educational agencies.[5] *See, e.g.,* 20 U.S.C. §§ 6316(b)(1)(E)(i) ("the local educational

---

**4.** The New York City defendants have also argued that the "transition" provision of the NCLBA also does not create personal rights. This "transition" provision provides that for schools which have previously been identified for improvement or corrective action prior to the enactment of the NCLBA, transfer and SES benefits may be available before the school has been identified as failing to make adequate yearly progress for two consecutive years, as would otherwise would be required. *See* 20 U.S.C. § 6316(f)(1)(A)(i). Because this provision only relates to the timing of when the notice, SES and transfer provisions of the NCLBA become effective, the transition provision could not by itself create personal rights should the notice, transfer and SES provisions themselves not create any rights. Con-

sequently, because the notice, transfer and SES provisions do not provide for individual rights, the "transition" provision, which the plaintiffs must rely on for relief it seeks for the 2002–03 school year, could also not create such individual rights.

It is not necessary to decide whether the language of the transitional provision provides an additional reason to find no right to relief for the 2002–2003 school year.

**5.** As the Court noted in evaluating another federal statute in *Touche Ross & Co. v. Redington*, "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." 442 U.S. 560, 572, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

agency ... shall .. provide all students enrolled in the school with the option to transfer..."); 6316(b)(5)(B) ("the local educational agency serving such school ... shall make supplemental educational services available..."). The NCLBA requires that states and local educational agencies give parents notice, the ability to transfer their children, and SES as a condition to their receiving federal funds, but does not provide those benefits in the first instance to parents or children. *See id.;* 20 U.S.C. § 6316(b)(6) (requiring that local educational agencies provide notice to parents of ability to transfer their children). When a statute focuses on the entity to be regulated, and the benefit to be conferred on an individual is a secondary consideration that flows from that regulation, Congress has not chosen to create the sort of *"individual* entitlement" that characterizes an unambiguous intention to create personal rights. *Gonzaga,* 536 U.S. at 287, 122 S.Ct. 2268 (quotations omitted) (emphasis in original).

■ Second, the fact that a statute's provisions have only an "aggregate focus" and is not concerned "with whether the needs of any particular person have been satisfied" is indicative of Congress' intent not to create individual rights. *Id.* at 288, 290, 122 S.Ct. 2268. The NCLBA's transfer and SES provisions have an aggregate focus, and are not concerned with a particular individual student's ability to receive a benefit under the statute. For example, both the transfer and SES provisions give priority for receiving those benefits to children from low-income families. *See* 20 U.S.C. §§ 6316(b)(1)(E)(ii), 6316(e)(1), 6316(e)(12)(A). This indicates that Congress was concerned with improving the educational conditions of children as a whole, and specifically, the condition of the subset of children from lower income fami-

lies, rather than ensuring that each individual child was provided with a right to transfer out of a failing school or a right to receive SES. In addition, with respect to the transfer provisions, the terms and conditions on transfers can be altered collectively for an entire group of students because the local educational agency can enter into cooperative agreements with other local educational agencies, but those agreements are required only "to the extent practicable" and depend on the agreement of other local educational agencies. 20 U.S.C. § 6316(b)(11). The same is true of the ability of children to receive SES, which the local educational agency may choose to waive on behalf of all of its students. 20 U.S.C. § 6316(e)(10)(A). The decisions whether to seek a waiver or to enter into cooperative agreements cannot be made by individual students, and are collective judgments that affect all students attending failing schools under the control of the local educational agency. As such, the NCLBA has an aggregate focus, which indicates that Congress did not intend to create individually enforceable rights under the statute.

Third, the nature of the enforcement mechanisms in the NCLBA also support the conclusion that Congress did not intend to create individual rights. The fact that this statutory scheme contains no procedures for individuals to enforce violations of the statute suggests that such a Congressional intent is not present. The NCLBA contains no provision for individuals to enforce the notice, transfer or SES provisions—there are no administrative or judicial procedures for any individual to use. Rather the statute contemplates that any enforcement actions for violations of the statute by states be taken by the Secretary of Education and vests such authority solely in the Secretary. *See* 20 U.S.C.

§ 6311(g)(2).[6] The fact that the Secretary of Education is provided with the sole enforcement authority for violations of the Act suggests that Congress intended that the interpretation of NCLBA be centralized with the Secretary of Education. As the Court explained with respect to FERPA, where the enforcement provisions also spoke only to the Secretary of Education, when Congress has created a centralized review and enforcement scheme "[i]t is implausible to presume that the Congress nonetheless intended private suits to be brought before thousands of federal-and state-court judges, which could only result in the sort of 'multiple interpretations' the Act explicitly sought to avoid." *Id.* at 290, 122 S.Ct. 2268.

The plaintiffs rely on two Supreme Court opinions decided prior to *Gonzaga*, *Wright v. Roanoke Redevelopment & Housing Authority*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) and *Wilder v. Virginia Hospital Assn.*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), to argue that the NCLBA does reflect the necessary Congressional intent to create individually enforceable rights. Although the Court did find that the statutes in *Wright* and *Wilder* did provide for the creation of individual rights, neither of those statutes is similar to the NCLBA and the Court went to great lengths in *Gonzaga* to explain that *Wright* and *Wilder* were exceptional cases.

In *Gonzaga* the Court explained that since the "clear and unambiguous" standard had been articulated, the Court had "only twice" found that legislation enacted pursuant to Congress' spending powers reflected an intention to create individual rights and that the more recent cases

"have rejected attempts to infer enforceable rights from Spending Clause statutes." *Gonzaga*, 536 U.S. at 280–81, 122 S.Ct. 2268.

In any event, neither of the statutes at issue in *Wright* nor *Wilder* is sufficiently similar to NCLBA to counsel in favor of concluding that Congress intended to create individual rights in the NLCBA. In *Wright*, in interpreting a rent-ceiling provision of the Public Housing Act, the Court permitted tenants to recover past rent overcharges because the FHA provision in question created a mandatory entitlement that was "focus[ed] on the individual family and its income." *Wright*, 479 U.S. at 430, 107 S.Ct. 766. In the NCLBA, there is no similar focus on the educational rights and benefits of individuals, and the statute focuses instead on the states and the local educational agencies, the entities to be regulated. The Court in *Gonzaga* noted that its finding in *Wright* that Congress had intended to create individual rights was supported by the fact that the Department of Housing and Urban Development ("HUD") had never provided a procedure by which tenants could complain to it about the failures of local public housing authorities. *Gonzaga*, 536 U.S. at 280, 122 S.Ct. 2268. In *Wright*, the Court detailed a decentralized enforcement mechanism whereby Congress directed HUD to continue its longstanding regulatory requirement that each public housing authority provide formal grievance procedures for the resolution of tenant disputes, but HUD had not provided a procedure for raising complaints to it. This decentralized enforcement structure was plainly inconsistent with the argument that Congress intended enforcement to be exclu-

---

**6.** There are no provisions for the Secretary of Education to penalize local educational agencies for violations of the NCLBA, although each local educational agency must submit plans for, among other things, the nature of SES to be provided to the State for approval. *See* 20 U.S.C. §§ 6312(a)(1),(b),(e).

sively with HUD. *Wright*, 479 U.S. at 426, 107 S.Ct. 766. Unlike the decentralized enforcement structure at issue in *Wright*, the NCLBA, as discussed above, provides for centralized enforcement authority.

*Wilder* is similarly inapplicable. In *Wilder*, the Court found that the Medicaid Act allowed health care providers to enforce a reimbursement provision because the statute had created a specific monetary entitlement payable to health care providers, and there were no sufficient means to police the failure of states to make such payments, if Congress failed to provide health care providers sufficient individual rights so as to allow for private enforcement. *See* 496 U.S. at 522–23, 110 S.Ct. 2510. As explained earlier, the NCLBA creates no entitlement for individuals, and no entitlements that would remain unenforced in the absence of private enforcement actions.[7]

Thus, the NCLBA does not reflect the clear and unambiguous intent of Congress to create individually enforceable rights. The statute lacks the necessary rights creating language, because it is focused on the regulation of states and local educational agencies, and focuses on improving the condition of children collectively, and therefore lacks the individual focus suggestive of Congressional intent to create personal rights. Finally, the enforcement scheme of the statute indicates a Congressional intent to centralize enforcement and thereby to avoid the possibility of individual lawsuits and multiple interpretations of provisions of the Act.[8] Consequently, the plaintiffs in this case cannot maintain an action under § 1983 to enforce provisions of the NCLBA. The defendants' motion to dismiss the plaintiffs' cause of action under § 1983 to enforce the NCLBA is granted.

### C.

The only remaining claim is the plaintiffs' claim under the New York State Constitution. Because there is no longer any federal claim, the Court declines to exercise supplemental jurisdiction and dismisses the remaining claim under the New York State constitution. *See* 28 U.S.C. § 1367(c)(3); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir.2001); *Morse v. University of Vermont*, 973 F.2d 122, 128 (2d Cir.1992); *DeVito v. Incorporated Vill. of Valley Stream*, 991 F.Supp. 137, 145 (E.D.N.Y.1998); *Irish Lesbian & Gay Org. v. Bratton*, 882 F.Supp. 315, 319

**7.** The plaintiffs also argue that because the weak and incomplete nature of the enforcement schemes in *Wright* and *Wilder* led the Court to find that private enforcement actions were permitted under the statutes at issue, and because the enforcement procedures in those cases are far more stringent that those available under the NCLBA, the NCLBA should also be read to permit individual enforcement actions. Neither *Wright* and *Wilder* stand for the proposition that the nature of the enforcement scheme is dispositive of the question of whether Congress intended to confer individual rights and permit private enforcement actions. In *Wright* and *Wilder*, before the Supreme Court reached the issue of whether the enforcement provisions were sufficient to protect the benefits conferred upon individuals, the Court first found that

there were such individual benefits. Under the NCLBA, there are no benefits conferred upon individuals directly. Therefore, even if the plaintiffs are correct that the NCLBA enforcement provisions are less stringent than those enforcement provisions in *Wright* and *Wilder*, the absence of an individual benefit makes it impossible to infer a Congressional intent to create individual rights.

**8.** Although the Supreme Court did not indicate in *Gonzaga* that legislative history is a relevant consideration in determining whether Congress intended to create individually enforceable rights, the plaintiffs have not pointed to any relevant legislative history of the NCLBA that indicates that Congress intended to create such rights.

(S.D.N.Y.), *aff'd,* 52 F.3d 311 (2d Cir.1995); *Lieberman v. Fine, Olin & Anderman, P.C.,* No. 00 Civ. 6533, 2002 WL 142198, at *4 (S.D.N.Y. Jan. 31, 2002).

## II.

It is unnecessary to reach the merits of the plaintiffs' motion for a preliminary injunction, because the defendants' motion to dismiss is being granted and the remaining New York State Constitution claim is also being dismissed. In any event, the preliminary injunction argued solely for rights under the NCLBA, rather than the New York State Constitution, and the plaintiff could not establish a likelihood of success for any claim under the NCLBA because such claims must be dismissed. The plaintiffs' motion for a preliminary injunction is denied as moot.

## CONCLUSION

For the reasons explained above, the defendants' motion to dismiss the NCLBA claim is granted. The Court declines to exercise supplemental jurisdiction over the remaining claim under the New York State Constitution. The motion for a preliminary injunction is denied as moot. The Clerk is directed to enter Judgment and to close this case.[9]

**SO ORDERED.**

---

9.   The Final Judgment should not be entered until the stipulation dismissing the claims against the Hempstead Defendants is entered. The stipulation has been signed by some but not all of the parties. As the Court has already directed, a fully executed stipulation dismissing the Hempstead defendants should be submitted promptly.