**FRESH START ACADEMY, Plaintiff,**

v.

**TOLEDO BOARD OF EDUCATION, Defendant.**

**No. 3:05 CV 7006.**

United States District Court, N.D. Ohio, Western Division.

April 4, 2005.

Lafe E. Tolliver, Toledo, OH, for Plaintiff.

Anastasia K. Hanson, Lisa E. Pizza, Spengler Nathanson, Toledo, OH, for Defendant.

*MEMORANDUM OPINION*

KATZ, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss (Doc. No. 12). Plaintiff has filed a response (Doc. No. 16). Defendant has filed a reply (Doc. No. 17). For the reasons stated below, Defendant's Motion to Dismiss is granted.

**BACKGROUND**

Plaintiff Fresh Start Academy ("Fresh Start") is a private provider of educational and tutoring services. Fresh Start would like to provide tutoring services to Toledo Public Schools students in exchange for funds made available to Defendant Toledo Board of Education ("the Board") under the No Child Left Behind Act ("the NCLBA" or "the Act"), 20 U.S.C. §§ 6301 *et seq.*

The NCLBA requires a "local educational agency" ("LEA"), the definition of which includes "a public board of education" like the Board, 20 U.S.C. § 1401(15)(A)[1], to take certain actions when an elementary school that it serves fails to make "adequate yearly progress." 20 U.S.C. § 6316(b). Among other things, the Board must:

> [A]rrange for the provision of supplemental educational services to eligible children in the school from a provider with a demonstrated record of effectiveness, that is selected by the parents and approved for that purpose by the State educational agency in accordance with reasonable criteria ... that the State educational agency shall adopt.

20 U.S.C. § 6316(e)(1); *see also* 20 U.S.C. §§ 6316(b)(5)(B), (7)(C)(iii), (8)(A)(ii). The NCLBA defines "supplemental educational services" ("SES") as:

> [T]utoring and other supplemental academic enrichment services that are—

1. After July 1, 2005, the operative provision will be codified at 20 U.S.C. § 1401(19)(A).

(I) in addition to instruction provided during the school day; and

(ii) are of high quality, research-based, and specifically designed to increase the academic achievement of eligible children on the academic assessments required under section 1111 [20 U.S.C. § 6311] and attain proficiency in meeting the State's academic achievement standards.

20 U.S.C. § 6316(e)(12)(C). A "provider" can be:

[A] non-profit entity, a for-profit entity, or a local educational agency that—

(I) has a demonstrated record of effectiveness in increasing student academic achievement;

(ii) is capable of providing supplemental educational services that are consistent with the instructional program of the local educational agency and the academic standards described under section 1111 [20 U.S.C. § 6311]; and

(iii) is financially sound. . . .

20 U.S.C. § 6316(e)(12)(B). When the NCLBA requires the Board to arrange SES for its students, the Board must:

(A) provide, at a minimum, annual notice to parents (in an understandable and uniform format and, to the extent practicable, in a language the parents can understand) of—

(I) the availability of services under this subsection;

(ii) the identity of approved providers of those services that are within the local educational agency or whose services are reasonably available in neighboring local educational agencies; and

(iii) a brief description of the services, qualifications, and demonstrated effectiveness of each such provider;

(B) if requested, assist parents in choosing a provider from the list of approved providers maintained by the State;

(C) apply fair and equitable procedures for serving students if the number of spaces at approved providers is not sufficient to serve all students; and

(D) not disclose to the public the identity of any student who is eligible for, or receiving, supplemental educational services under this subsection without the written permission of the parents of the student.

20 U.S.C. § 6316(e)(2). The parents of eligible students, not the Board, select the provider of SES for each individual student. 20 U.S.C. § 6316(e)(3). Once the parent has selected a provider, the Board must enter into a contract with that provider for SES. *Id.*

As part of the NCLBA, Congress has appropriated and allocated to the states funds to enable LEAs and state educational agencies ("SEAs") to carry out the Act's requirements. 20 U.S.C. §§ 6302, 6332. The Act instructs LEAs like the Board to make a specified amount of the LEA's federal allocation available for SES, 20 U.S.C. §§ 6316(b)(10)(A)(ii), (e)(6), and allows SEAs like the state board of education to use a portion of their federal allocation to help LEAs pay for SES, 20 U.S.C. § 6316(e)(7).

Fresh Start claims it is a state-approved provider of SES and that it has applied to the Board seeking "entry and access to the available federal and state funds that are designed for tutorial services via the No Child Left Behind Act." (Doc. No. 1, Ex. A, ¶¶ 2, 5). Fresh Start claims the Board has "misappropriated" funds that it has received under the NCLBA; blocked Fresh Start from obtaining funds and qualified students for SES; engaged in preferential treatment by allowing certain providers of SES access to school facilities while excluding others, including Fresh Start; and thereby caused Fresh Start financial harm. Fresh Start seeks compensatory and punitive damages, an accounting of funds received by the Board

for the provision of SES under the NCLBA, and an order allowing Fresh Start to "bid and contract for said available tutorial services." *Id.* at ¶ 15.

The Board has moved under Federal Rules of Civil Procedure 12(b)(1) and (6) to dismiss Fresh Start's complaint, arguing that all of Fresh Start's claims depend upon rights allegedly conferred by the NCLBA, but that the Act does not confer any private rights upon Fresh Start.

## DISCUSSION

### A. Motion to Dismiss Standards

■ In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), while viewing the complaint in a light most favorable to the plaintiffs, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Westlake, supra*, at 858. *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed.2004).

Generally, Fed.R.Civ.P. 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall into two categories: facial attacks and factual attacks. Fed.R.Civ.P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994) cert. denied. 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994). A facial attack challenges the sufficiency of the pleading itself. Upon receiving such a motion, the Court must take all of the material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974)). In contrast, a factual attack challenges the factual existence of subject matter jurisdiction. *See Ohio Hosp. Ass'n v. Shalala*, 978 F.Supp. 735, 739 (N.D.Ohio.1997).

■ When a Court is inquiring about whether it has subject matter jurisdiction, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Ritchie*, 15 F.3d at 598 (internal citations omitted). *See also RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir.1996). "In reviewing such a motion, a district court is to probe the facts and assess the validity of its own jurisdiction. In doing so, the Court has a wide discretion to consider affidavits and the documents outside the complaint, and may even conduct a limited evidentiary hearing if necessary." *Ohio Hosp. Ass'n*, 978 F.Supp. at 739 (relying on *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990)). The plaintiff bears the burden of demonstrating that the Court has and may appropriately exercise jurisdiction over the subject matter. *RMI Titanium*, 78 F.3d at 1134. The Court may examine evidence of its power to hear a case, and must make any factual findings to determine whether it has jurisdiction. *Kroll v. United States*, 58 F.3d 1087, 1090 (6th Cir.1995); *Rogers v. Stratton Inds., Inc.*, 798 F.2d 913, 915 (6th Cir.1986); *Ohio Hosp. Ass'n*, 978 F.Supp. at 739. A Fed. R. Civ. Pro. 12(b)(1) motion is not converted into a Fed.R.Civ.P. 56 motion for summary judgment when a Court examines evidence for this purpose. *Rogers*, 798 F.2d at 915.

## B. Section 1983 and Implied Private Right of Action

The NCLBA provides no procedure for individual entities like Fresh Start to enforce its requirements: the Act's only "penalties" provision allows the Secretary of Education to withhold funds from states that do not meet the Act's requirements. 20 U.S.C. § 6311(g)(2). As the Board points out, Fresh Start's complaint does not make it clear whether Fresh Start claims the NCLBA creates private rights that it is attempting to enforce under 42 U.S.C. § 1983, or whether it claims the Act creates an implied private right of action. Whichever Fresh Start intended, the initial inquiry is the same and is dispositive.[2]

The Supreme Court has indicated that its "implied right of action cases should guide the determination of whether a statute confers rights enforceable under § 1983." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283, 122 S.Ct. 2268, 2275, 153 L.Ed.2d 309, 321 (2002). Therefore, whether Fresh Start's claims are brought under § 1983 or under an implied private right of action, the Court must first "determine whether Congress *intended to create a federal right*," or, in other words, whether Congress "intended to confer individual rights upon a class of beneficiaries." *Id.* at 283, 285, 122 S.Ct. at 2275, 2276 (emphasis in original). In enacting the NCLBA, Congress did not.

"[I]f Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms—no less and no more than what is required for Congress to create new rights enforceable under an implied private right of action." *Id.* at 290, 122 S.Ct. at 2279. Moreover, "[i]t is only violations of *rights,* not *laws,* which give rise to § 1983 actions." *Id.* at 283, 122 S.Ct. at 2275. Therefore, "[t]he question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights on those beneficiaries." *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga,* 536 U.S. at 286, 122 S.Ct. at 2277.

■ When Congress enacts legislation under its spending power, "the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981). Congress must speak " 'with a clear voice' " and demonstrate an " 'unambiguous' intent to confer individual rights" for a funding provision to be enforceable under § 1983. *Gonzaga,* 536 U.S. at 280, 122 S.Ct. at 2273 (quoting *Pennhurst,* 451 U.S. at 17, 101 S.Ct. at 1540).

"For a statute to create ... private rights, its text must be 'phrased in terms of the persons benefitted.' ... Where a

---

**2.** While the initial inquiry is the same when determining whether an individual may enforce a statutory violation under § 1983 or under an implied private right of action, once that inquiry has been satisfied and it has been determined that a right has been created, "a plaintiff suing under an implied right of action still must show that the statute manifests an intent to create not just a private right but also a private remedy," whereas plaintiffs su-

ing under § 1983 need not make this second showing, because § 1983 is itself a mechanism for enforcing federal rights. *Gonzaga Univ. v. Doe,* 536 U.S. 273, 284, 122 S.Ct. 2268, 2275–76, 153 L.Ed.2d 309 (2002). Because the initial inquiry is dispositive in this case, it is not necessary for the Court to consider Congress's intent regarding a private remedy under the NCLBA.

statute does not include this sort of explicit 'right-or-duty-creating language' [courts] rarely impute to Congress an intent to create a private right of action." *Id.* at 284 & n. 3, 122 S.Ct. at 2275 & n. 3 (quoting *Cannon v. Univ. of Chicago,* 441 U.S. 677, 692 n. 13, 99 S.Ct. 1946, 1954 n. 13, 60 L.Ed.2d 560 (1979)). Examples of statutory text cited by the Supreme Court in *Gonzaga* that are phrased in terms of the persons benefitted include Title VI of the Civil Rights Act of 1964, which provides that "[n]o person in the United States shall ... be subjected to discrimination under any program of activity receiving Federal financial assistance," 42 U.S.C. § 2000d, and Title IX of the Education Amendments of 1972, which provides that "[n]o person in the United States shall, on the basis of sex ... be subjected to discrimination under any education program or activity receiving Federal financial assistance," 20 U.S.C. § 1681(a). *See Gonzaga,* 536 U.S. at 284 & n. 3, 122 S.Ct. at 2275 & n. 3. "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Alexander v. Sandoval,* 532 U.S. 275, 289, 121 S.Ct. 1511, 1521, 149 L.Ed.2d 517 (2001) (quoting *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981)).

Additionally, statutes that have an "aggregate" focus in that "they are not concerned with 'whether the needs of any particular person have been satisfied'" generally do not demonstrate an intent to create individual, private rights. *Gonzaga,* 536 U.S. at 288, 122 S.Ct. at 2278 (quoting *Blessing v. Freestone,* 520 U.S. 329, 343, 117 S.Ct. 1353, 1361, 137 L.Ed.2d 569 (1997)). Likewise, when Congress creates a "centralized" enforcement scheme, "[i]t is implausible to presume that the same Congress nonetheless intended private suits to be brought before thousands of federal— and state-court judges, which could only result in the sort of 'multiple interpretations' the Act explicitly sought to avoid." *Id.* at 290, 122 S.Ct. at 2279.

In *Gonzaga,* the Supreme Court applied these principles to hold that individuals may not sue under § 1983 or under an implied private right of action to enforce the Family Educational Rights and Privacy Act of 1974 ("FERPA"), which Congress enacted under its spending power and which "prohibit[s] the federal funding of educational institutions that have a policy or practice of releasing educational records to unauthorized persons." *Id.* at 276, 122 S.Ct. at 2271. The Court found that FERPA, which provides that "no funds shall be made available" to offending institutions, lacked the requisite "rights-creating language" found in Title VI and Title IX. *Id.* at 287, 122 S.Ct. at 2277. The Court additionally found that FERPA was focused on the aggregate policies and practices of the institutions regulated, not on individual instances of disclosure. *Id.* at 288, 122 S.Ct. at 2278. Finally, FERPA's centralized enforcement mechanism led the Court to conclude that Congress did not intend to create individually enforceable federal rights under FERPA. *Id.* at 289–90, 122 S.Ct. at 2278–79.

In *Association of Community Organizations for Reform Now v. New York City Department of Education,* 269 F.Supp.2d 338 (S.D.N.Y.2003), the United States District Court for the Southern District of New York held that, like FERPA, "the NCLBA does not reflect the clear and unambiguous intent of Congress to create individually enforceable rights." *Ass'n of Cmty. Orgs.,* 269 F.Supp.2d at 347. In that case, a group of New York parents sued several city school boards, alleging that the defendants deprived them of their rights under the NCLBA to transfer their students out of failing schools and to re-

ceive SES. *Id.* at 342. The court found that the NCLBA, like FERPA, contains no rights-creating language, focuses on the educational entities regulated rather than on any protected individuals, has an aggregate as opposed to an individual focus, and contains a centralized enforcement mechanism indicating a congressional intent that individual enforcement not be allowed. *Id.* at 344–46. The court therefore held that the plaintiffs could not bring an action under § 1983 to enforce the provisions of the NCLBA because "Congress did not intend to create individually enforceable rights with respect to the notice, transfer, or SES provisions contained in the NCLBA." *Id.* at 344.

▇ For the same reasons, this Court holds that providers of SES, like Fresh Start, may not bring an action under § 1983 or under an implied private right of action to enforce any provisions of the NCLBA, as the Act does not evince an unambiguous congressional intent to create rights enforceable by such individuals.

First, the NCLBA lacks the sort of "rights-creating language" required to demonstrate that Congress intended to create a private right. The SES provisions of the NCLBA state that "the local educational agency ... shall ... arrange for the provision of supplemental educational services ... from a provider" and that the LEA "shall" provide certain notices to parents of eligible students. The Act therefore focuses on the entity regulated and does not confer a benefit or entitlement upon an individual, as Title VI and Title IX, for example, do by providing that "no person ... shall be subjected to discrimination." As in *Association of Community Organizations*, any benefit to SES providers inuring from the NCLBA's SES provisions is a "secondary consider-

ation" that does not demonstrate the unambiguous intent of Congress to create a federal right. *See* 269 F.Supp.2d. at 345.

Second, as the court in *Association of Community Organizations* pointed out, the NCLBA has an " 'aggregate focus' and is not concerned 'with whether the needs of any particular person have been satisfied.' " *Id.* at 345 (quoting *Gonzaga*, 536 U.S. at 288, 122 S.Ct. at 2278). The Act focuses on the proper education of children as a whole, as opposed to that of individual children. Likewise, it does not focus on individual providers of SES. The NCLBA sets out minimum requirements for qualified "providers" of SES and states that a "provider" may be a non-profit or for-profit entity and may even be the LEA itself. 20 U.S.C. §§ 6316(e)(5), (12)(B). Clearly Congress was not concerned with enabling particular individuals to provide SES, but that the SES provided be of an overall minimum, uniform quality.

Finally, the NCLBA's central enforcement mechanism, which provides that the Secretary of Labor may withhold funds from noncompliant states, 20 U.S.C. § 6311(g)(2), indicates that Congress did not intend to provide for piecemeal enforcement by individuals across the country.

In sum, nothing in the NCLBA indicates that Congress intended to create individual rights that Fresh Start may enforce in a court of law. While it is true that SES providers like Fresh Start may benefit from the NCLBA's SES provisions, Fresh Start must show that the statute confers upon it a right, not merely a benefit, before it may sue under § 1983 or under an implied private right of action. Fresh Start can make no such showing.[3] Therefore, the Board's motion to dismiss Fresh

3. Fresh Start may not rely on the Department of Education publication appended to its response (Doc. No. 16) as the source of any enforceable rights: the publication is not binding law.

Start's claims for violations of the NCLBA is granted.

### C. Due Process

It is unclear whether Fresh Start states a claim for a violation of its federal due process rights. In its response to the Board's motion to dismiss, Fresh Start asserts that:

> The injury that the Plaintiff complains of is both real and ongoing and the NCLB and the SES was [sic] imbued with language that benefits the tutorial provider and the violation of the due process rights can be a cause of action for the injury [sic] party.

(Doc. No. 16, p. 8). As any due process claim appears to be premised on the violation of rights conferred by the NCLBA, the Court's conclusion above that that Act confers no rights upon individual organizations like Fresh Start mandates dismissal of any due process claim as well.

### D. State Funding

Fresh Start also claims that the Board receives funds from the state for SES, and asserts in its response that:

> In the alternative, the Defendant has violated the use of state and local funding for tutorial services by their constant denial of the right of the Plaintiff to contract for posted services but yet the Defendant allows others (their in house tutorial services) to reap the financial reward or gain from the taxpayer's funds, a benefit that should not be allowed to occur due to the negative academic status of certain Toledo Public Schools.

(Doc. No. 16, p. 8).

First, as the Board points out, the funds it receives from the state for SES are actually monies provided to states by the federal government under the NCLBA that are then funneled to LEAs to assist with SES costs. Therefore, the use of these funds is governed by the NCLBA, which, as explained above, provides Fresh Start with no enforceable rights. Moreover, even if the funds did come from state or local sources, the Court fails to see how one can "violate[ ] the use of state and local funding." Any claim based on the misuse of state funding is therefore dismissed.

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 12) is granted.

IT IS SO ORDERED.