Filed 5/8/14  Graham v. Cal. Bd. of Education CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JACK GRAHAM,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA BOARD OF EDUCATION, et al.,<br><br>Defendants and Respondents. | B245288<br><br>(Los Angeles County<br>Super. Ct. No. BC482694) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Malcolm Mackey, Judge.  Affirmed.


Jack Graham, in pro per.


Amy Bisson Holloway, General Counsel, Edmundo Aguilar, Assistant General Counsel and Jamie M. Errecart, Deputy General Counsel for Defendants and Respondents.


_____

Plaintiff and appellant Jack Graham is a tutor and substitute teacher. In 2010 and again in 2011, he applied to be added to California's list of approved providers of supplemental education services (SES), which the state is required to maintain as a condition of receiving federal funding pursuant to the No Child Left Behind Act (NCLB) (20 U.S.C. § 6301, et seq.).[1] Both applications were rejected as "incomplete" by defendant and respondent the California Department of Education (the Department). Plaintiff filed this action in 2012. The complaint names as defendants the Department, the California Board of Education (the Board), the former Superintendent of Public Instruction (Jack O'Connell), the current Superintendant of Public Instruction (Tom Torlakson), the Director of the Department's District and School Improvement Division (Fred Balcom), and former and current (as of the time the complaint was filed) members of the Board (collectively, defendants).[2] It alleges causes of action for violation of plaintiff's rights to free speech, to work and to equal protection under Title 42 of the United States Code section 1983 (§ 1983) and the California Constitution, government

---

[1] Plaintiff represented himself in the trial court and continues to do so on appeal. In addition to plaintiff, the complaint named several classes of plaintiffs, including other tutors, parents and students, school districts and taxpayers. The Appellant's Opening Brief (AOB) stated that plaintiff was representing himself and all other parties. We rejected the AOB because plaintiff is not an attorney. In a Notice of Errata and Corrections, plaintiff removed the offending statement. We address only the issues relating to whether the complaint states a cause of action on plaintiff's behalf, not whether it states a cause of action on behalf of any other purported class.

[2] All references to "the complaint" are to the First Amended Complaint. The former Board members named in the complaint are: Theodore Mitchell, Ruth Bloom, Yvonne Chan, Gregory Jones, Jonathan Williams, David Lopez, James Aschwanden, Jorge Lopes, Rae Belisle, Alan Arkatov and Benjamin Austin. The named "current" Board members are: Michale Kirst, Trish Williams, Carl Cohn, Aida Molina, James Ramos, Patricia Rucker, Ilene Straus.

waste in violation of Code of Civil Procedure section 526a and unfair competition.[3]  The gravamen of plaintiff's claims is that the criteria developed by defendants to evaluate SES provider applications is unreasonable and inconsistent with the federal standards; but for the challenged criteria, plaintiff's application would be complete; and defendants should be ordered to accept and approve his application to be added to the list of approved SES providers.  The trial court sustained defendants' demurrer to the complaint without leave to amend.  On appeal, plaintiff contends he pleaded facts sufficient to state each cause of action.  We affirm.

## STANDARD OF REVIEW

We begin with the well-established standard of review from an order sustaining a demurrer without leave to amend:  We accept as true all well-pleaded facts and those subject to judicial notice, but not deductions, contentions, or conclusions of law or fact.  We review the trial court's ruling on a demurrer independently without deference to the trial court.  (*Diamond Benefits Life Ins. Co. v. Troll* (1998) 66 Cal.App.4th 1, 5.)  Whether leave should have been granted is reviewed for abuse of discretion; denial of leave to amend is an abuse of discretion if there is any reasonable probability the defect can be cured by an amendment.  (*Fox v. JAMDAT Mobile, Inc.* (2010) 185 Cal.App.4th 1068, 1078–1079.)  "The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]'  [Citation.]  However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory.  [Citation.]"  (*Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

---

[3]  The complaint also included causes of action captioned "Conspiracy" (the fifth cause of action) and "Declaratory Relief" (the sixth cause of action).  Conspiracy is a basis for liability for a civil wrong but is not a cause of action.  (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 173.)  Similarly, declaratory relief is an equitable remedy, not a cause of action.  (*Ibid*.)  Because the declaratory relief and conspiracy claims in this case were derivative of other causes of action as to which we find the trial court properly sustained defendants' demurrer, we conclude defendants' demurrer to the so-called conspiracy and declaratory relief causes of action was also properly sustained.

## FEDERAL AND STATE STATUTORY SCHEMES

We next turn to an overview of the federal and state statutory schemes governing SES providers. A stated purpose of NCLB is to meet " 'the educational needs of low-achieving children in our Nation's highest-poverty schools, limited English proficient children, migratory children, children with disabilities, Indian children, neglected or delinquent children, and young children in need of reading assistance.' (20 U.S.C. § 6301(2).)" (*Alejo v. Torlakson* (2013) 212 Cal.App.4th 768, 774.) NCLB "reflects Congress' judgment that the best way to raise the level of education nationwide is by granting state and local officials the flexibility to develop and implement educational programs that address local needs, while holding them accountable for the results. NCLB implements this approach by requiring States receiving federal funds to define performance standards and to make regular assessments of progress toward the attainment of those standards. (20 U.S.C. §§ 6311(b)(2).) NCLB conditions continued receipt of funds on demonstrations of 'adequate yearly progress.' (*Ibid.*)" (*Horne v. Flores* (2009) 557 U.S. 433, 461; see also 20 U.S.C. § 6316(a)(1)(A).)

Schools that fail to make adequate yearly progress for two consecutive years are designated as needing "improvement;" those that fail to make adequate progress for an additional two years are designated as needing "corrective action;" and a school that fails to make adequate progress for another year (i.e. five consecutive years) is designated as needing "restructuring." Schools falling in any of the three designations must provide students of low-income families with SES from an approved provider with a demonstrated record of effectiveness. (20 U.S.C. § 6316 (e)(1).) States must maintain a list of approved SES providers. (20 U.S.C. § 6316(e)(4)(C).) NCLB sets forth general standards providers must meet to be included on the state's approved SES provider list:

> "[The] provider shall agree to carry out the following: [¶] (A) Provide parents of children receiving supplemental educational services under this subsection and the appropriate local educational agency with information on the progress of the children in increasing achievement, in a format and, to the extent practicable, a language that such parents can understand. [¶] (B) Ensure that instruction

4

provided and content used by the provider are consistent with the instruction provided and content used by the local educational agency and State, and are aligned with State student academic achievement standards. [¶] (C) Meet all applicable Federal, State, and local health, safety, and civil rights laws. [¶] (D) Ensure that all instruction and content under this subsection are secular, neutral, and nonideological." (20 U.S.C. § 6316(e)(5).)

More detailed standards are set forth in the Code of Federal Regulations (the federal regulations). The federal regulations require states to develop and apply objective criteria to evaluate potential SES providers. (34 C.F.R. §§ 200.47(a)(2), 200.47(b).) States must also monitor the effectiveness and quality of the services provided by approved SES providers (34 C.F.R. § 200.47(a)(4)(i)) and to withdraw approval from a provider that "fails, for two consecutive years, to contribute to increasing academic proficiency of students receiving [SES] from that provider[.]" (34 C.F.R. § 200.47(a)(4)(ii).)

In California, the discretion afforded states under NCLB is exercised by the Board. (*Coachella Valley Unified School District v. State of California* (2009) 176 Cal.App.4th 93, 115 (*Coachella*); see Ed. Code, § 52058.1, subd. (a) [establishing NCLB "Liaison Team" to advise Superintendent of Public Instruction and Board on all matters related to implementation of NCLB].) It is the Board that is tasked with adopting rules and regulations to implement NCLB. (See Ed. Code, § 12001 ["The state board shall adopt rules and regulations for the allocation of federal funds to school districts entitled to receive federal funds for the support of schools. . . ."]; see also Gov. Code, § 11342.2 [to be valid, regulations adopted by state agency with authority to adopt regulations to carry out provisions of a statute must be both reasonably necessary to effectuate the purpose of the statute and be consistent with the statute].) The rules and regulations which implement the federal standards for approving SES providers are set forth in the California Administrative Code (the administrative code). (See Cal. Code Regs., tit. 5, §§ 13705 et seq.)

Both the federal regulations and the administrative code define "SES provider" as an "entity." The federal definition is "a non-profit entity, a for-profit entity, an LEA [Local Educational Authority], an educational service agency, a public school, including

5

a public charter school, or a private school" that "has a demonstrated record of effectiveness in increasing academic achievement of students . . . ." (34 C.F.R. § 200.47(b)(1)(i).) Consistent with the federal regulations, the administrative code requires an "eligible applicant" for approved SES provider status to be "a public or private (nonprofit or for-profit) entity, public school (including a charter school), private school, school district, county office of education, institution of higher education, faith-based or community-based organization, or business that is legally constituted and qualified to do business in California[.]" (Cal. Code Regs., tit. 5, § 13075.1(d).)

The federal regulations and the administrative code require an SES provider applicant to meet several criteria which we describe below.

### Business Licenses

Section 13705.2 of the administrative code requires a completed SES provider application to include "[e]vidence that [the applicant] holds a valid business license issued by the California Secretary of State if it intends to provide services statewide, or that it holds a valid business license issued by the appropriate local licensing entity where it intends to provide services[.]" (Cal. Code Regs., tit. 5, § 13075.2(b)(7).)

### Academic Criteria

The federal regulations require that an SES provider have "a demonstrated record of effectiveness in increasing the academic achievement of students in" math, science, reading and language arts. (34 C.F.R. § 200.47(b)(i).) Section 13705.1(c) of the administrative code defines "demonstrated record of effectiveness in increasing academic proficiency of students" to mean "an eligible applicant has documented improvement in the academic performance of a majority of students who have completed the approved provider's basic program in SES, as evidenced by an increase in individual student scores for two consecutive years on pre and post tests for the subjects in which they are providing services . . . ." (Cal. Code Regs., tit. 5, § 13075.1(c).) And section 13075.2(b)(1) requires applicants to show: "A demonstrated record of effectiveness in increasing the academic proficiency of students from the two immediately preceding school years based on data, disaggregated within content area by

6

grade level for which the SES application is submitted[.]"  (Cal. Code Regs., tit. 5,§ 13075.2(b)(1).)

### *Parent Recommendations*

The federal regulations also require the state to consider parent recommendations "regarding the success of the providers' instructional program in increasing student achievement" and "[e]valuation results, if any, demonstrating that the instructional program has improved student achievement."  (34 C.F.R. § 200.47(b)(3)(iii).)  Consistent with the federal regulations, California requires a completed SES provider application to contain, "At least five letters of reference from previous clients (e.g., families, schools, districts, teachers, etc.) offering testimonial information about the positive impact of the applicant's program."  (Cal. Code Regs., tit. 5, § 13075.2(b)(2).)

### *Financial Soundness*

The federal regulations also require an SES provider to be "financially sound." (34 C.F.R. § 200.47(b)(iii).)  California implements this federal requirement by requiring applicants to demonstrate that they are "fiscally sound" as shown by:  "(A) Proof of financial resources to operate as an approved provider through the first six months of the first year for which it is seeking approval, including a description of how the organization receives funding (e.g., grants, fees-for-services, etc.) separate from reimbursements for provider services; . . .  (B) Proof of financial viability (e.g., through audits, financial statements, or credit rating); and (C) Organizational budgets that identify all sources of revenues available to the applicant and cash flow activity related to the expenditures of that revenue."  (Cal. Code Regs., tit. 5, § 13075.2(b)(12)(A)(B)&(C).)  Also in keeping with the federal requirement that SES providers be "financially sound," the administrative code requires the application to include "[a] description of the staffing, fiscal, equipment, and facility resources of the organization that enable it to work with students in compliance with these regulations and applicable federal, state, and local statutes and regulations[.]"  (Cal. Code Regs., tit. 5, § 13075.2(b)(10).)

With this statutory scheme in mind, we turn next to the factual allegations of the complaint, which we accept as true for the purposes of the demurrer.

7

A.    *The Complaint*

### 1.    Introductory Allegations

Plaintiff has passed the parts of the California Subject Examinations For Teachers that qualify him to teach "foundational math" in public school; he also has "a current 30-day emergency substitute permit issued by the California Commission on Teacher Credentialing." He is on the Los Alamitos Unified School District's list of free-lance tutors and prior to May 2012 (the date the complaint was filed) worked for various approved SES providers. In May 2012, plaintiff worked for a tutoring company that was not an approved SES provider. Plaintiff's tutoring method is to work with the student-client's regular school program materials. Plaintiff analyzes the student's homework as well as quiz and exam results to determine what the student does not understand; plaintiff helps the student to understand what they need to know to do their homework, quizzes and exams and answers their questions.

In March 2010 and March 2011, plaintiff submitted applications to be added to the state's list of approved SES providers. The complaint does not include a copy of either application, but alleges that the applications indicated plaintiff was a sole proprietor with no employees and that he intended to personally provide SES services. Attached as Exhibits A and B to the complaint are letters from the Department notifying plaintiff that his applications were incomplete.[4] Plaintiff's applications were found incomplete for the

---

[4]    Exhibit A, a letter dated April 13, 2010, states that plaintiff's March 2010 application was incomplete because it "[d]id not submit sufficient supporting documentation, e.g., lack of proof of being legally constituted and qualified to do business in California and/or being fiscally sound to operate as a provider." In a letter dated May 26, 2010, the Department of Education provided plaintiff with "a copy of the screening checklist" for plaintiff's March 2010 application. According to the checklist, plaintiff's application omitted: (1) three letters of reference from previous clients; (2) evidence that plaintiff was legally constituted and qualified to do business in California; (3) evidence that plaintiff was "fiscally sound," including proof of financial

following reasons: (1) plaintiff had not run a tutoring business for the two years before making his application and did not produce a statistical assessment demonstrating that his program had resulted in improved academic proficiency; (2) plaintiff did not submit five letters of recommendation or references; (3) plaintiff was a sole proprietor and not a business entity; and (4) plaintiff did not show that he was financially sound. The complaint alleges that these requirements were unreasonable and conflicted with the federal regulations.[5] The complaint alleges that rejecting plaintiff's application because it did not comply with the state's unreasonable requirements constitutes interference with his fundamental right to pursue his profession as a tutor, infringes on his First Amendment right to free speech and violates his right to due process and equal protection. No compelling state interest justified defendants' refusal to accept his application. Plaintiff has suffered economic harm as a result of not having his name included on the list of approved SES providers.

The complaint also challenges the methodology defendants use to comply with the NCLB requirement that the various states must annually assess SES providers to assure that their services are contributing to improved student academic proficiency. It also

_____

resources to operate as an SES provider for six months, proof of financial viability, and organizational budgets identifying all sources of revenue. Exhibit B, a letter dated April 18, 2011, states that plaintiff's March 2011 application was incomplete for the same reason his 2010 application had been found incomplete, plus two additional reasons: (1) the application did not address four required elements in the narrative; (2) the application did not include a completed Template for Quality Verification of Testing Instrument.

Plaintiff argues the trial court erred in its construction of the exhibits attached to the complaint. The trial court's interpretation is not binding on us in reviewing a demurrer. We consider the exhibits in light of the rule that facts set forth in exhibits attached to a complaint are accepted as true and given precedence over contrary allegations in the pleading. (*Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627.)

[5]     There is no allegation that the Board failed to abide by the procedural requirements set forth in the Government Code for adopting rules and regulations to implement state statutes.

9

alleges defendants are conspiring to sabotage California's public education system so as to further the agenda of the proponents of charter schools.

## 2. The Causes of Action

The first cause of action is brought expressly as a civil rights action under Title 42 of the United States Code section 1983. It alleges that defendants' refusal to accept plaintiff's applications and to allow plaintiff to appeal that decision, violates plaintiff's federal constitutional right to free speech and to work as an approved SES provider. The second cause of action alleges defendants' conduct violates plaintiff's constitutional right to "speech" as a tutor/speaker under the federal and California constitutions. The third cause of action alleges defendants' conduct violates plaintiff's constitutional "rights to work" as a tutor. The fourth cause of action alleges that the manner in which defendants' have selected SES providers has resulted in state funds being wasted on low quality SES in violation of Code of Civil Procedure section 526a (government waste); plaintiff has suffered "a direct pocketbook injury" as a result of defendants' refusal to add plaintiff to the list of approved providers. The seventh cause of action for unfair competition alleges defendant's policies and regulations that prevent plaintiff from becoming an approved SES provider constitute unreasonable, unlawful and fraudulent business practices.

## 3. The Prayer For Relief

On the first, second, third and fourth causes of action, plaintiff seeks an order requiring defendants to accept plaintiff's 2010 and 2011 applications, eliminate the requirement that applicants demonstrate the past success of their tutoring program and eliminate the requirement that applicants provide five letters of recommendation. On the first, second and third causes of action, plaintiff also seeks "incidental monetary damages," plus additional sums. Plaintiff also seeks the following declarations: (1) California's criteria for not accepting plaintiff's applications are invalid; (2) California's method of testing for student improvement is invalid; (3) defendants are incompetent; (4) California's SES program is not serving its statutory purpose and the

10

tutoring services currently available are of low quality; and (5) the rule precluding use of students' regular quizzes and tests to assess student needs is contrary to NCLB policy.

### B.    *The Demurrer*

Defendants demurred to the complaint on multiple grounds including that plaintiff lacked standing, the challenged regulations were enacted pursuant to the Administrative Procedure Act, plaintiff's claims fail to state a cause of action, defendants are immune from liability and each cause of action is uncertain. Plaintiff opposed the demurrer.

At the September 11, 2012 hearing on the demurrer, the trial court observed that Exhibits A and B to the complaint establish that plaintiff did not complete the application to become an approved SES provider. Plaintiff did not dispute that his application omitted the items noted in Exhibits A and B, but argued that it was unreasonable for the state to require those items. Unconvinced, the trial court sustained the demurrer without leave to amend, adopting its 11-page written tentative as its final ruling. The written ruling first cites *Monell v. Dep't of Soc. Servs.* (1978) 436 U.S. 658, 659, in support of the finding that the Department and Board were local government agencies which did not have absolute immunity from section 1983. However, the trial court found the challenged actions of those agencies upon which section 1983 liability was premised – rejecting plaintiff's applications as incomplete for the reasons stated in Exhibits A and B to the complaint – did not violate section 1983. Second, citing *Will v. Michigan Dept. of State Police* (1989) 491 U.S. 58, 66, the trial court found that plaintiff's section 1983 claims against the Department and Board were barred by the Eleventh Amendment. Third, regarding the defendants sued in their individual capacities, the trial court concluded that it was unnecessary to determine whether they were subject to qualified immunity because the facts alleged did not show that their conduct violated plaintiff's constitutional rights. Fourth, citing *Alliance for Children, Inc. v. City of Detroit Pub. Schs.* (E.D. Mich. 2007) 475 F.Supp.2d 655, 661-662 (*Alliance*) and *Fresh Start Academy v. Toledo Board of Education* (N.D. Ohio 2005) 363 F.Supp.2d 910, 914 (*Fresh Start*), the trial court concluded that NCLB does not create a private right of action in

11

SES providers. Notice of Entry of Dismissal was served and filed on October 3, 2012. Plaintiff timely appealed.

## DISCUSSION

### A. *NCLB Does Not Create A Private Right of Action In SES Providers*

Plaintiff challenges the trial court's conclusion that NCLB does not provide a private right of action. He argues: (1) NCLB and the related federal regulations provide plaintiff with enforceable rights; and (2) whether NCLB provides a private right of action is not relevant because his claims are based on violations of his federal and state constitutional rights, not on violations of NCLB. We conclude that the gravamen of plaintiff's claims are that the manner in which defendants have developed rules and regulations to implement the SES provisions of NCLB violate plaintiff's alleged constitutional right to speak and work as an approved SES provider. However, because NCLB does not provide potential SES providers with a private right of action, plaintiff has failed to state a cause of action under the statute.

Although neither the Ninth Circuit nor California state courts have addressed the issue, federal district courts in other circuits have held there is no private right of action under NCLB. For example, the plaintiff in *Ass'n of Cmty. Org. for Reform Now v. New York City Dep't of Education* (S.D.N.Y. 2003) 269 F.Supp.2d 338 (*Association*) alleged, among other things, that the defendants deprived students of their right to receive SES. The court granted the defendants' motion to dismiss, finding that Congress "did not intend to create individually enforceable rights with respect to . . . [the] SES provisions contained in the NCLBA." (*Id.* at p. 344.) The *Association* court analogized NCLB to the Family Educational Rights And Privacy Act of 1974, which the United States Supreme Court in *Gonzaga Univ. v. Doe* (2002) 536 U.S. 273, 280, held could not be enforced with a section 1983 action because it did not create any personally enforceable rights. First, the New York court reasoned, NCLB does not contain "rights-creating" language. (*Association* at p. 344.) When the statutory language "focuses on the entity to

12

be regulated, and the benefit to be conferred on an individual is a secondary consideration that flows from that regulation, Congress has not chosen to create the sort of '*individual entitlement*' that characterizes an unambiguous intention to create personal rights. [Citation.]" (*Id*. at p. 345.) Second, the SES provisions "have an aggregate focus, and are not concerned with a particular student's ability to receive a benefit under the statute. For example, [the SES] provisions give priority for receiving those benefits to children from low-income families. [Citations.] This indicates that Congress was concerned with improving the educational conditions of children as a whole, and specifically, the condition of the subset of children from lower income families, rather than ensuring that each individual child was provided with . . . a right to receive SES." (*Association* at p. 345.) Third, the enforcement mechanisms contained within NCLB (e.g. the Secretary of Education may withhold funds until the state has fulfilled its obligations under NCLB (20 U.S.C. § 6311(g)(2)), or it may conduct proceedings for the recovery of funds from the state and for the issuance of cease and desist orders (20 U.S.C. §§ 1234(a)-(i)), support the conclusion that Congress did not intend to create individual rights. (*Id*. at pp. 342, 345-346.)

The Ohio federal district court came to the same conclusion in *Fresh Start, supra*, 363 F.Supp.2d 910. In that case, the plaintiff alleged it was a "state-approved provider of SES," that it had applied to the Toledo Board to receive NCLB funds for providing tutoring services, but that the Toledo Board blocked Fresh Start from receiving funds and students. (*Id*. at p. 912.) The *Fresh Start* court observed that NCLB provides no procedures for individual entities to enforce its requirements. (*Id*. at p. 914.) And that only a violation of rights, not laws, give rise to a section 1983 action. (*Ibid*.) Relying on *Gonzaga, supra*, and *Association, supra*, the *Fresh Start* court concluded that SES providers "may not bring an action under section 1983 or under an implied private right of action to enforce any provisions of [NCLB], as the Act does not evince an unambiguous congressional intent to create rights enforceable by such individuals." (*Fresh Start* at p. 916.)

In *Alliance, supra*, 475 F.Supp.2d 655, the Michigan federal district court agreed with the New York and Ohio federal courts. The plaintiff in *Alliance* provided tutoring services. It sued the school district for wrongfully removing it from the approved SES provider list. Adopting the reasoning of the earlier courts, *Alliance* concluded that NCLB did not create a right in SES providers to enforce claims against the school district. (*Id*. at pp. 658-661.)

We find the reasoning in *Association*, *Fresh Start* and *Alliance* persuasive and adopt it here. NCLB does not create a right in SES providers, or prospective SES providers, to enforce claims against the state, state agencies or state officials for withholding approval. Since the gravamen of each cause of action is that plaintiff was damaged by defendants' alleged violation of NCLB, each cause of action necessarily fails to state a cause of action. Accordingly, defendants' demurrer to each cause of action was properly granted without leave to amend.

## B.    *Defendants Are Immune From § 1983 Liability*

Even assuming, for the sake of argument, that plaintiff's federal constitutional claims are not derived from NCLB, defendants are immune from liability under section 1983. The trial court made two seemingly inconsistent conclusions regarding immunity: (1) under *Monell, supra*, 436 U.S. 658, the defendants are *local* government agencies, and agents thereof, all with qualified immunity from section 1983 liability, but their challenged actions did not violate any of plaintiff's constitutional rights; and (2) under *Will, supra*, 491 U.S. 58, and the Eleventh Amendment, the defendants are *state* agencies, and agents thereof, with absolute immunity from section 1983 liability. Plaintiff challenges both findings. We conclude that the Board and the Department are state governmental agencies and the individual defendants are agents of the state sued in their official capacities. As such, defendants are immune from liability for plaintiff's section 1983 claims.

A section 1983 suit is the vehicle by which an individual's federal constitutional rights are enforced. (See *McAllister v. Los Angeles Unified School Dist.* (2013)

14

216 Cal.App.4th 1198, 1207 [§ 1983 affords a method for "vindicating federal rights elsewhere conferred," but does not create substantive rights].)  Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."  Here, although only the first cause of action is expressly brought pursuant to section 1983, the second and third causes of action are implicitly brought pursuant to that statute as well.  For example, paragraph 125 of the complaint asserts that the second cause of action states "essentially" the same claims as the first cause of action, but is limited to only a violation of plaintiff's "rights of 'speech' as tutors/speakers . . . under the SES provisions of the federal NCLB."  Likewise, paragraph 136 of the complaint asserts that the third cause of action states "essentially" the same clams as the first cause of action, but is limited to only a violation of the plaintiff's "right[] to work . . . as a tutor . . . ."  Thus, the first, second and third causes of action, which all claim violations of plaintiff's federal rights, are section 1983 claims.

"The 'two essential elements' to a claim under section 1983 are '(1) whether the conduct complained of was committed by a *person* acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.' (*Parratt v. Taylor* (1981) 451 U.S. 527, 535 [].)"[6] (*Irwin v. City of Hemet* (1994) 22 Cal.App.4th 507, 516, italics added.)  Local governmental bodies are considered "persons" subject to suit under section 1983. (*Kirchmann v. Lake Elsinore Unified School District* (2000) 83 Cal.App.4th 1098, 1101, citing *Monell, supra*, 436 U.S. at pp. 690-691.)  But the Eleventh Amendment makes states and state agents immune from suit under section 1983 in both federal and state court.  (*Kirchmann* at p. 1101, citing *Will, supra*, 491 U.S. at pp. 690-691.)  In

---

[6]   *Parratt* was overruled on unrelated ground in *Davids v. Williams* (1986) 474 U.S. 327, 330-331.

*Kirchmann*, the court held that California school districts are arms of the state for purposes of section 1983 immunity. (*Kirchmann* at p. 1115.) In addition, state officers "sued in their official capacity are not considered persons under section 1983 and are immune from liability under the statute by virtue of the Eleventh Amendment and the doctrine of sovereign immunity. [Citations.]" (*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 829.) A plaintiff cannot circumvent this immunity by suing a state official in his or her individual capacity for acts that were undertaken by the official in his or her official capacity. (*McAllister, supra*, 216 Cal.App.4th at pp. 1207-1208.)

Here, the Department and Board are indisputably state agencies. As such, they are immune from suit under section 1983. Each of the individual defendants is also immune because each is a state officer and the complaint does not include any factual allegations that any individual was acting in other than his or her official capacity in developing the challenged criteria for approving SES providers, and in applying those criteria to reject plaintiff's application as incomplete. For these reasons, plaintiff cannot state a cause of action under section 1983 and the trial court did not err in sustaining defendants' demurrer without leave to amend to the first, second and third causes of action, each of which is based on section 1983 liability.

Plaintiff's reliance on *Moor v. County of Alameda* (1973) 411 U.S. 693 (*Moor*), for a contrary result is misplaced. The issue in that case was whether the county was a person under section 1983. Here, the defendants are state agencies and representatives thereof, not a county or other local governmental agency.

C.      *The Complaint Does Not State A Cause of Action Under State Law*

Plaintiff contends that even if there is no liability under section 1983 and NCLB, he nevertheless stated a cause of action under state law and the California Constitution. Assuming, for the sake of argument, that plaintiff's state claims are not based on NCLB, he has failed to state cognizable claims under either the Constitution or other state laws.

The gravamen of the allegations in the second and third causes of action is that, by not approving his application to become an SES provider, defendants violated plaintiff's

16

right to speech and to work as a tutor under various sections of Article 1, of the California Constitution. But, plaintiff has no constitutional right to become an approved SES provider. (See *Landau v. Superior Court* (2000) 81 Cal.App.4th 191, 208["There is no fundamental constitutional right to work for, or to have continued employment with, a particular public or private employer."].) Thus, the complaint fails to state a cause of action for violation of plaintiff's state constitutional rights.

Nor does plaintiff show how the complaint states a cause of action under the Government Claims Act (Gov. Code, § 810 et seq.). Government Code section 815.2 (§ 815.2) provides:

> "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. [¶] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Here, defendants' acts and omissions challenged by the complaint are the development of criteria to implement NCLB, and the application of those criteria so as to find plaintiff's SES provider applications incomplete. As we have already explained, such acts and omissions do not give rise to any cause of action against the individual defendants.

Plaintiff's reliance on *Elson v. Public Utilities Commission* (1975) 51 Cal.App.3d 577 (*Elson*), for the proposition that the approval process for SES applications was ministerial and not discretionary, is misplaced. Discerning the nature of the state's duties under NCLB is a matter of statutory construction. (*Coachella, supra*, 176 Cal.App.4th at p. 113.) "A ministerial act is one that a public functionary is required to perform in a prescribed manner in obedience to the mandate of legal authority, without regard to his or her own judgment or opinion concerning the propriety of such act. [Citation.]" (*Ibid.*, internal quotations omitted.) In *Elson*, the court held that the commission's duty to prevent a bus company from operating without statutorily required insurance was not discretionary. *Elson* is inapposite. The decision whether to approve an SES provider

17

application, including whether the application is complete, is discretionary. (Cf. *Colome v. State Athletic Comm'n* (1996) 47 Cal.App.4th 1444, 1454 [requirement that boxer undergo neurological exam is mandatory upon boxer, decision whether to issue the boxing license is discretionary with the Commission].)[7]

D.    *The Trial Court Did Not Err In Finding the Reasons Defendants Rejected Plaintiff's Applications Were Set Forth In Exhibits A and B*

The trial court stated that the letters from the Department rejecting plaintiff's 2010 and 2011 applications (Exhibits A and B to the complaint) "establish that Defendants' rejection of Plaintiff's two SES Applications was based on Plaintiff's failure to comply with the requirements for submitting the applications, and were not based on Defendants' violation of Plaintiff's rights." Plaintiff challenges this ruling, arguing that the letters show the reasons defendants *contend* they rejected plaintiff's applications, but not the true reasons.

The flaw in plaintiff's argument is twofold. First, nowhere does plaintiff explain what he believes defendants' true reasons for rejecting his application were, or how those reasons violated his rights. Thus, he has not shown how this finding was prejudicial. Second, nowhere in the complaint does plaintiff allege that his applications were rejected for other than the stated reasons. On the contrary, the complaint alleges that his applications were rejected as incomplete for the stated reasons, but that those reasons were "invalid, arbitrary, and even unlawful reasons because they violated his rights." Even at the hearing on the demurrer, plaintiff did not dispute that his application was found incomplete for the reasons stated in Exhibits A and B; he argued only that it was unreasonable for defendants to require the omitted items. Thus, the gist of plaintiff's claims is not that defendants offered sham reasons for finding his application incomplete;

---

[7]    Plaintiff alleges in his first amended complaint that the relevant parts of the Administrative Code are "underground regulations" and hence invalid. (*California Advocates for Nursing Home Reform v. Bonta* (2003) 106 Cal.App.4th 498, 506.) On appeal, plaintiff does not develop that argument and we deem it waived. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

18

rather, it is that the requirement that plaintiff include the omitted items in his application is unreasonable. On this record, we find no error in the trial court's finding that the reasons defendants rejected plaintiff's applications were those set forth in Exhibits A and B.

As to plaintiff's argument that the SES provider application requirements were unreasonable, our review of the federal regulations and the administrative code, in light of the NCLB, convinces us that the requirements for appointment as an SES provider are reasonable. Plaintiff has failed to demonstrate that the items required on the application were arbitrary or unrelated to the success of the NCLB.

E.     *The Complaint Does Not State A Cause of Action For "Government Waste"*

Even assuming, for the sake of argument, that the fourth cause of action, captioned "Government Waste" and expressly brought pursuant to Code of Civil Procedure section 526a, is not based on NCLB, we find it fails to state a cause of action.

Code of Civil Procedure section 526a provides that an action may be maintained against any "county, town, city or city and county of the state" or "against any officer thereof, or any agent, or other person, acting in its behalf," to restrain and prevent "any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state." Although the statute refers to local governments, suit may also be brought against a state agency or officer. (*Cates v. California Gambling Control Com.* (2007) 154 Cal.App.4th 1302, 1308 (*Cates*); *California Assn. for Safety Education v. Brown* (1994) 30 Cal.App.4th 1264, 1281.)

In *Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 482, the court explained: "Just what amounts to 'waste' is more readily intuited than enunciated. It has been described as 'a useless expenditure . . . of public funds' that is incapable of achieving the ostensible goal. [Citation.] Certainly it reaches outright fraud, corruption, or collusion. [Citations.] Even when ' "done in the exercise of a lawful power," ' public spending may qualify as waste if it is ' "completely unnecessary," ' or ' "useless," ' or 'provides no public benefit.' [Citations.] Waste is money that is

19

squandered, or money that is left uncollected, and thus is a constitutionally prohibited gift of public resources. [Citations.] Waste can exist even when there is no net loss, as when 'illegal procedures actually permit a saving of tax funds.' [Citation.] [¶] Waste does not encompass the great majority of governmental outlays of money or the time of salaried governmental employees, nor does it apply to the vast majority of discretionary decisions made by state and local units of government: ' "[T]he term 'waste' as used in section 526a means something more than an alleged mistake by public officials in matters involving the exercise of judgment or wide discretion. To hold otherwise would invite constant harassment of city and county officers by disgruntled citizens and could seriously hamper our representative government at the local level. Thus, the courts should not take judicial cognizance of disputes which are primarily political in nature, nor should they attempt to enjoin every expenditure that does not meet with a taxpayer's approval." ' [Citations.]"

Here, the waste alleged in the fourth cause of action is the money spent by California school districts on "extremely 'low quality' and utterly 'ineffective' SES tutoring services." According to the complaint, "Such money should not be so clearly and utterly wasted as it is, and such waste can be enjoined under California Code of Civil Procedure [section] 526a, and by simply ordering that the named defendants cease and desist in applying such unlawful and unreasonable regulations (criteria) as they are [as alleged elsewhere in the complaint], and so that people as well qualified, even 'highly qualified' to serve as SES tutors – such as plaintiff – can rightly be 'approved' as SES providers." Thus, the fourth cause of action challenges defendants' exercise of judgment in exercising its duty to craft rules and regulations to implement the SES provisions of NCLB, and their exercise of discretion in applying those rules and regulations to plaintiff's and others' applications to become approved SES providers. The complaint does not allege that state expenditures for SES services are unnecessary. On the contrary, the complaint recognizes the necessity of those expenditures, but maintains that plaintiff should be one of the recipients of the money being spent. These allegations focus on discretionary acts pursuant to statutes and regulations and are insufficient to state a cause

20

of action to enjoin government waste.  As such, the trial court properly sustained the demurrer to the fourth cause of action without leave to amend.

F.      *The Complaint Does Not State A Cause of Action For Unfair Competition*

Even assuming, for the sake of argument, that the seventh cause of action, captioned "Unfair Competition" and brought under the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.) (§ 17200), is not based on NCLB, we find it fails to state a cause of action.

Section 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ."  The UCL establishes three varieties of unfair competition – acts or practices which are unlawful, unfair or deceptive.  (*Drum v. San Fernando Valley Bar Ass'n* (2010) 182 Cal.App.4th 247, 253, citing *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163.)  "An 'unlawful business activity' includes 'anything that can properly be called a business practice and that at the same time is forbidden by law.' [Citation.]" (*People v. McKale* (1979) 25 Cal.3d 626, 632.)  "To sustain a UCL cause of action based on such fraudulent or deceptive practices, a plaintiff must show that ' " 'members of the public are likely to be deceived.' " ' [Citations.]" (*Weinstat v. Dentsply Internat., Inc.* (2010) 180 Cal.App.4th 1213, 1223, fn. 8.)  The test for whether a business practice is unfair depends on whether the plaintiff is a competitor of the defendant, or a consumer.  In this case, the competitor test is more applicable because the gist of plaintiff's claim is that the defendants allowed other less qualified tutors to be added to the approved SES provider list.  "In competitor cases, a business practice is 'unfair' only if it 'threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.' [Citation.]  If 'the conduct is deemed reasonable and condoned under the antitrust laws,' there is no violation of the UCL.  [Citations.]" (*Drum, supra*, at p. 254.)

21

The business practice challenged by plaintiff is "the concocting of such unlawful and unreasonable regulations and policies [as alleged elsewhere in the complaint] as were even enforced upon [plaintiff] . . . and making it absurdly and unlawfully impossible for someone like [plaintiff] (not having run a tutoring business in the past, yet being a very experienced and capable tutor) to even be 'approved' as an SES tutoring services provider in California." Paragraph 177 alleges that defendants are motivated by a desire to sabotage the public in order to promote charter schools. These allegations which essentially chastise the State of California for enacting unworthy regulations do not allege any unlawful, unfair or deceptive business practices under Business and Professions Code section 17200. Accordingly, the trial court properly sustained the demurrer to the seventh cause of action without leave to amend.

## DISPOSITION

The judgment is affirmed.


RUBIN, ACTING P. J.

WE CONCUR:


FLIER, J.


GRIMES, J.


22